**STATE of Missouri, Respondent,**

v.

**Donald WELLS, Appellant.**

No. 38393.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 12, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

Application to Transfer Denied
Oct. 10, 1979.

John Wm. Buechner, Manchester (on appeal only), for appellant.

John D. Ashcroft, Atty. Gen., John M. Morris, III, Asst. Atty. Gen., Jefferson City, for respondent.

STEWART, Judge.

Defendant appeals from the judgment entered upon a jury verdict finding him guilty of robbery in the first degree by means of a dangerous and deadly weapon.

Defendant contends that the trial court erred in (1) overruling his motion to suppress identification, (2) overruling his objection to cross-examination of character witnesses with respect to defendant's alleged involvement in another crime, (3) overruling defendant's objection to cross-examination of defendant with respect to an alleged theft from an interstate shipment, and (4) failing to give an instruction with respect to good character.

We reverse and remand.

Defendant does not challenge the sufficiency of the evidence therefore a brief statement of the facts will suffice.

On July 1, 1975 defendant and another man came into the Sureway Sandwich Shop at about 9:30 PM. There was one waitress on duty. They purchased cokes and gave the waitress two dollars in bills and asked for a roll of nickels so that they could play the pinball machine. The nickels and the money from purchase of the nickels for the pinball machine were kept in the ice box. The waitress went to the ice box, got out the nickels and deposited the bills in a box. The two men played the pinball machine until they left at about 11:00 PM. At about 2:30 AM on July 2 defendant and his companion returned to the sandwich shop. Defendant pulled a gun from his shirt pocket under the vest he was wearing and pointed it at the waitress who was still on duty. Defendant's companion told her that they wanted the money, "just . . . bills." She got the money from the cash register and placed it on the counter for him. He then stated that he wanted the money from the ice box, "just the bills." After complying with the demand she was told to go into the back room and stay there for ten minutes. After a short wait in the back room the waitress emerged when she heard a customer come into the shop.

Defendant's evidence including his own testimony was that he did not go into the sandwich shop on July 1 or July 2.

■ Defendant first contends that the line-up from which appellant was identified was impermissibly suggestive because defendant was the only person in the line-up wearing some of the clothing consistent with the description of the clothing given by the victim to the police.

The victim had described the person later identified as defendant as a black male with dark complexion, age twenty to twenty-five, height between five feet six inches and five feet eight inches, weight approximately one hundred and forty pounds, wearing a dark brown suede vest, a light blue shirt and dark-colored jeans. When apprehended about three hours after the robbery defendant fit the description except that he was not wearing a shirt. Defendant was placed in the line-up at about 8:00 AM on July 2. He was wearing the clothing in which he had been arrested. In reviewing a photograph of the line-up it appears that the other four persons in the line-up were selected for their resemblance to the defendant in size and physical characteristics. None of the other four was wearing dark trousers and a vest.

The victim selected defendant out of the line-up as the person who held the gun upon her. She also identified defendant at the preliminary hearing held about one month after the robbery. She also made a positive identification in court at the trial.

The criteria for the determination of the admissibility of identification testimony has

been given attention recently in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) where the court concluded that the "linchpin" of the determination is reliability and it reiterated the factors to be considered as "[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself."

In the case before us the victim had the opportunity to view defendant for over one hour on the evening of July 1 while he was drinking coke and playing the pinball machine. When defendant and his companion returned in the early hours of July 2 she had the opportunity of observing defendant for about five minutes. The robbers not only took the time to get the money from the cash register but insisted upon getting the money that they knew was kept in the ice box. The victim testified that her attention was drawn more to defendant than to his companion because defendant was holding the gun upon her. Her description of the defendant was sufficiently accurate so as to lead to his arrest based on the description within hours of the robbery. The witness viewed the line-up at 8:00 AM on the morning of the robbery just five and one-half hours after the holdup. The police made no suggestions as to the identity of defendant as the suspect. She also testified that her identification was based primarily upon defendant's physical features. Under the totality of the circumstances we cannot say that the identification procedure was so impermissibly suggestive as to lead to irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). For a case almost identical to the case at bar see *State v. Carter*, 572 S.W.2d 430, 435 (Mo.1978).

Defendant next complains of the cross-examination of his character witnesses. On cross-examination of these witnesses they were asked if they felt that the persons who formed the basis of defendant's good reputation would have a different opinion if they had been aware that "he was arrested for a theft of interstate shipment by the Federal Authorities."

 Contrary to defendant's contention we find no error because "[T]he State may cross-examine a character witness with reference to defendant's prior arrests and accusations of specific misconduct for the purpose of testing the trustworthiness, knowledge and good faith of the witness." *State v. Siems*, 535 S.W.2d 261, 264 (Mo. App.1976). See also *State v. Burr*, 542 S.W.2d 527 (Mo.App.1976). In the case at bar there was no abuse such as found in *Siems* and there is evidence that the record of such encounter with the law was available and the question was asked in good faith. We find no error.

The basis of defendant's next contention arose during the cross-examination of the defendant:

"Q. Let me ask you this, Mr. Wells: Back in 1965 isn't it a fact that you admitted to a Judge over in the Federal Court that you had committed a theft for an interstate shipment?

A. No.

MR. WALTON: I object to that. He knows that that is a lie, and he is trying to influence the jury.

THE COURT: The objection will be overruled. You may answer, sir.

MR. SINDEL: Let me ask you again:

Q. You are saying that you never admitted to a Judge that you had committed a theft, an interstate theft, back in 1963, in Federal Court, the St. Louis Eastern District Court.

A. I didn't admit it.

Q. You never admitted to it?

A. No.

Q. Well, what did you do then?

MR. WALTON: I object, Judge, to the question. It implies that the defendant did something.

THE COURT: The objection is sustained in that form.

MR. SINDEL: Q. Do you recall being over in that courtroom.

A. Yes.

Q. And your testimony today is that you never admitted to doing that; is that right?

A. What do you mean?

Q. Did you admit to the Judge that you had committed a theft, is that right?

MR. WALTON: Judge, I object to that as being repetitious. He has already answered that. He has already stated that he didn't admit to doing anything.

THE COURT: Very well—

MR. WALTON: He has already stated that he has never been convicted of a crime and the prosecutor is trying to implicate him in a crime, that he had committed a crime and he is trying to prejudice the minds of the jury.

THE COURT: All right. The objection will be sustained.

MR. SINDEL: Your Honor, this is proper cross-examination.

THE COURT: It has been covered. It is repetitious.

MR. SINDEL: Q. I just want to understand that you are saying right now that you never admitted to the Judge—

THE COURT: Mr. Sindel, just a moment, sir. This is the exact same question you are attempting in the face of the Court's ruling on the objection by the defense of persisting, and you know better.

THE COURT: (sic) Now, Judge—

THE COURT: Just a moment, no 'Judge' nothing. The objection is sustained."

■ The objection first made to this line of questioning came after the question had been answered and was untimely and preserved nothing for review. *State v. Damico*, 513 S.W.2d 351 (Mo.1974). In addition the objection while difficult to categorize does not apprise the court of any legal reason for the objection. *State v. Lang*, 515 S.W.2d 507 (Mo.1974).

That objection was overruled and when another question along the same line was asked no objection was made. When the line of questioning was pursued the only objection made was that it was "repetitious." This objection was sustained.

■ We also note that the objection raised in the motion for new trial [1] is not an objection made at the trial and is not the contention now made on appeal. A party may not broaden or change the issues on appeal. *State v. Gilbert*, 544 S.W.2d 595, 598 (Mo.App.1976). The issue is not before us for review.

Nor do we believe that this matter should be reviewed as plain error because it comes within the realm of discretion, as said in *State v. Dunn*, 577 S.W.2d 649, 653 (Mo. 1979):

"... a defendant testifying in his own defense may, as a general proposition, be impeached the same as any other witness, nevertheless, a court should, on objection being made, limit certain cross-examination of a defendant where the cross-examination is technically purely collateral as to general credibility and the nature is such as to impair the defendant's right to a fair trial on the charge brought against him."

Defendant next contends that the court erred in failing to give MAI CR 2.50 titled "Character of Defendant Bearing on Guilt or Innocence."

■ The State brings to our attention the fact that the instruction has not been set out in full in the argument portion of defendant's brief in violation of Rule 84.-04(e). This is a violation of the rule but we decline to treat it as a failure to preserve the instruction point for appeal. The requirement of 84.04(e) is to enable the court to determine whether the instruction involved was in proper form and correctly stated the law. Here the instruction involved is a MAI–CR pattern instruction which must be given by the court without request if required. Defendant's point is determined by the Notes on Use not the

---

1. The contention in the motion for a new trial read: "Counsel's delving into a prior arrest of defendant and proceedings collateral thereto was highly prejudicial and intended to play on the prejudices of the jury and as such constituted error.

wording of the instruction. We do not find our review of the case hampered by the violation.

We also note that the Attorney General with commendable fairness has set out the instruction in full in his brief. This satisfies the purpose of the rule as set out in *State v. Abram*, 537 S.W.2d 408, 411[5] (Mo. 1976). The defendant did not request instruction 2.50. However, the Notes on Use require that this instruction be given whether requested or not "whenever necessary."

The first paragraph of 2.50 reads as follows:

"Evidence has been introduced concerning the reputation of defendant as to those traits of character which ordinarily would be involved in the commission of an offense such as that charged in this case. This evidence was received because a jury may reason that a person of good character as to such traits would not be likely to commit the offense charged against the defendant. Therefore, you should consider such evidence along with all of the other evidence in the case in determining the guilt or innocence of the defendant."

The instruction is "necessary" when there is substantial evidence to meet the requirement of the instruction "as to those traits of character which ordinarily would be involved in the commission of an offense such as that charged in this case." To say that one's reputation is good or that one has a reputation for truthfulness does not require the court to give MAI–CR 2.50. *State v. Woodfin*, 559 S.W.2d 273, 277 (Mo.App. 1977).

In the case at bar defendant called four character witnesses. One of the witnesses testified solely to his reputation for truthfulness. Betty Zienta when asked defendant's "reputation for truthfulness and honesty in the community" testified that it was "very good." Louise Roemer testified that he was reported to be "honest and trustworthy." The court permitted that part of Lorraine Brown's testimony as to defendant's reputation for honesty to stand. Gary Hamilton testified that defendant's reputation for truthfulness and honesty in the community was "excellent."

Honesty while encompassing truthfulness has a more comprehensive meaning. "Uprightness" is given as a synonym of "honest." The trait of "uprightness" is said to be "marked by strong moral rectitude." Websters Third New International Dictionary.

In *State v. Quinn*, 344 Mo. 1072, 130 S.W.2d 511 (1939), defendant was accused of the crime of grand larceny. The trial court rejected his offer to show his general reputation for honesty and as being a law abiding citizen. It was held that these two traits were relevant to the crime of grand larceny. Robbery is but an aggravated form of larceny. *State v. Lasky*, 133 S.W.2d 334 (Mo.1939).

We hold that there was substantial evidence of the trait of character ordinarily involved in the crime of robbery and that it was prejudicial error to fail to give MAI–CR 2.50.

The judgment is reversed and remanded for a new trial.

STEPHAN, P. J., and KELLY, J., concur.