STATE of Missouri,
Plaintiff-Respondent,

v.

James Kyle GALARDO,
Defendant-Appellant.

No. 12998.

Missouri Court of Appeals,
Southern District,
Division Two.

June 30, 1983.

Larry Maples, Asst. Public Defender, Joplin, for defendant-appellant.

John Ashcroft, Atty. Gen., Dan Crawford, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

Upon trial to a jury, defendant James Kyle Galardo was convicted of second-de-

gree burglary, as defined by § 569.170, RSMo 1978, and stealing, as defined by § 570.030.1, RSMo 1978. The trial court expressly found defendant to be a prior offender within the meaning of § 558.016.2, as amended, Laws of Mo.1981, p. 636, and fixed defendant's punishment at imprisonment for 2 terms of 5 years, to be served concurrently.

Defendant filed a timely motion for new trial on the ground of newly-discovered evidence. After a hearing at which defendant was present, the trial court denied the motion. Defendant's sole point on appeal is that the trial court erred and abused its discretion in refusing to grant a new trial on the basis of the newly-discovered evidence.

Upon trial, the State produced evidence from which a jury composed of rational men and women could find that the defendant burglarized a Joplin meat store and stole 8 hams and 15 boxes of hamburger patties. He was assisted in the commission of both crimes by two juvenile aiders, Gene Huff and Sammy Reed, both 15 years of age. Huff was the State's principal fact witness on trial. Huff was asked on direct examination: "Q. Did anyone make any promises to you in return for your testimony today? A. What do you mean, ma'am? Q. Did anyone promise you any deal if you would testify today? A. No." Reed was not called and did not testify at the trial. However, both Huff and Reed were interviewed by defense counsel before the trial; Reed indicated he had signed a statement inculpating the defendant but said he was not going to testify.

After conviction, at the hearing on defendant's motion for new trial, Reed testified:

A. I told [the Joplin police officers] that me and a couple of my friends had done it because, you know, they kept telling me, 'Yeah, we got evidence,' and all this stuff, that they knew I done it and they knew who else was involved and stuff. And I kept ... I told them a couple of different statements and then finally they told me,

you know, they said, 'Well, you know, if you don't cooperate with us you could get certified.' And I said, 'All right.' So they showed me this one statement that the other kid that was with me, Gene Huff, and he signed a statement saying that me and my step-uncle James Galardo was involved with the burglary with him. So I went ahead and wrote a statement and signed it because they kept, you know, talking about me getting certified.

Q. And you told [the Joplin police officers] that Jim Galardo was involved in that burglary.

A. Yeah.

Q. Sammy, I talked to you, didn't I, before Mr. Galardo went on trial for that burglary?

A. Yeah.

Q. *Did you ever tell me before that trial that he wasn't involved?*

A. *Yeah.*

Q. *You told me that he was not involved before the trial?*

A. *No.*

Q. Okay.

A. I ... you asked me if I was going to testify, I think, and I said no. (Our emphasis.)

In the course of argument on the motion, defense counsel undertook to explain why he had not called Sammy Reed as a witness. He did so as follows:

Your Honor, the point I'm trying to make is that the defense *did* question Mr. Reed, regardless of his recollections of that day. *And we had no reason to subpoena Mr. Reed because it's my recollection that he confirmed the report that he'd already given to the police and he gave no indication that he would absolve Mr. Galardo if he were called to testify.* Certainly the defense would have no reason to call a witness [who would] merely add more fuel to the prosecution's case.... *It was only after the trial and after I contacted him and I did this mainly because of my desire to explore all avenues....* I

*asked him if he'd been telling the truth—this was after the trial—and he said, no, he had not been telling the truth....* (Our emphasis.)

The defendant argues that the trial court erred in denying his motion for new trial, setting forth the general guidelines articulated in *State v. Taylor,* 589 S.W.2d 302, 305 (Mo.banc 1979), and many other precedents. It is argued: "Clearly the testimony of Sammy Leroy Reed was discovered after the trial was over. Prior to trial, Reed told the police that he, Muriel Eugene Huff, and defendant had burglarized Southtown Meat. This statement was never retracted to the defense until after the trial."

So, in arguing the point, defendant answers it as well. Reed's testimony at the hearing upon the motion for new trial is testimony in the nature of a retraction, even though he was not called at the trial. Cf. *Jones v. State,* 568 P.2d 837, 854[31] (Wyo.1977). " '[R]ecanting testimony is exceedingly unreliable, and is regarded with suspicion; and it is the right and duty of the court to deny a new trial where it is not satisfied that such testimony is true....' " *State v. Harris,* 428 S.W.2d 497, 501 (Mo. 1968). See also *Johnson v. United States,* 291 F.2d 150, 154[3–5][6] (8th Cir.1961), cert. denied 368 U.S. 880, 82 S.Ct. 130, 7 L.Ed.2d 80 (1961). The truth or falsity of Reed's evidence at the hearing on the after-trial motion was for the trial court in the exercise of a sound judicial discretion. *Connelly v. United States,* 271 F.2d 333, 334–335[1][2][3] (8th Cir.1959), cert. denied 362 U.S. 936, 80 S.Ct. 755, 4 L.Ed.2d 750 (1960). We find no abuse of that discretion.

The defendant also further asserts that Reed's statement shows the defendant was convicted on perjured testimony. Of course, Reed did not testify at the trial, and there is not the slightest indication that the State knew of his recantation before the hearing on the motion for new trial. Again, the question was to be determined by the trial court as a question of fact. *State v. Pennington,* 392 S.W.2d 5, 9 [7–9] (Mo.App.1965). There was a reasonable ba-

sis for the trial court's conclusion, and we find no abuse of discretion.

Accordingly, the judgment is affirmed.

MAUS, P.J., and PREWITT, J., concur.