**STATE of Missouri,
Plaintiff–Respondent,**

v.

**William CULKIN, Defendant–Appellant.**

**Nos. 54444, 57607.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 9, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1990.

Application to Transfer Denied
July 31, 1990.

Richard H. Sindel, Larry Darnell Hale, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Jared R. Cone, Breck K. Burgess, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

STEPHAN, Judge.

Defendant was charged by indictment with two counts of sodomy and one count of rape, all charged as class B felonies. A jury found him guilty on all three counts. The trial court sentenced defendant to twelve years on Count I (sodomy), twelve

years on Count II (sodomy) to run concurrently with the sentence imposed in Count I, and twelve years on Count III (rape) to run consecutively to the sentences imposed in Counts I and II, for a total of twenty-four years.

The victim, ten year old B.J.B., lived with her aunt and uncle, the defendant. On the morning of March 30 or 31, 1987, defendant had B.J.B. pull her pants down and get on her hands and knees on the bed. He inserted his penis into her vagina and anus. On the evening of April 3, 1987 defendant came into B.J.B.'s bedroom, and put his fingers underneath her pants and touched her vaginal area.

The next day B.J.B. told her friend S.G. that she was supposed to go to the country with defendant. She said she did not want to go because during the trip defendant would have her sit close to him and he would stick his hand between her legs. S.G. repeated this to her mother, who called the Child Abuse Hotline.

B.J.B. was examined at St. Louis Children's Hospital by Dr. Isabella Rosenbloom on April 4, 1987 at approximately 10:00 p.m. The doctor did not observe any scars or bruising on the outer part of the rectum, but noted that this does not mean penetration did not occur. The vaginal examination showed B.J.B.'s posterior fourchette (the area immediately below and to the rear of the vaginal opening) had a lot of scarring and irregularly shaped lacerations. The doctor stated that this type of injury was consistent with penile and digital penetration. B.J.B. also had abrasions and hyperemia (redness and swelling lateral to the vagina) which indicated that her vaginal area had been exposed to trauma within the previous seventy-two hours. Dr. Rosenbloom also testified that, because of the position of the scarring around the hymen ring, the victim's condition was consistent with penile penetration rather than masturbation.

Defendant relied on an alibi defense. He claimed that, at the time the offenses were committed, he was at work. The state introduced a rebuttal witness, however, who refuted defendant's claim that he worked for twelve hours straight at the times the offenses occurred.

Defendant raises twelve points on appeal. In reviewing the points we will discuss other facts as they become necessary.

█ In his first point, defendant claims that the trial court erred in sustaining part of the state's motion in limine which precluded the introduction of evidence regarding the alleged prior sexual activity of the victim pursuant to § 491.015, RSMo 1986, which reads as follows:

1. In prosecutions under chapter 566, RSMo, or prosecutions related to sexual conduct under chapter 568, RSMo, opinion and reputation evidence of the complaining witness' prior sexual conduct is inadmissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:

(1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime; or

(2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;

(3) Evidence of immediate surrounding circumstances of the alleged crime; or

(4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.

2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.

3. If the defendant proposes to offer evidence of the sexual conduct of the complaining witness under this section, he shall file with the court a written

motion accompanied by an offer of proof or make an offer of proof on the record outside the hearing of the jury. The court shall hold an in camera hearing to determine the sufficiency of the offer of proof and may at that hearing hear evidence if the court deems it necessary to determine the sufficiency of the offer of proof....

This statute creates only a presumption of irrelevance which may be overcome. *State v. Gibson*, 636 S.W.2d 956, 958 (Mo. banc 1982). The statute enumerates exceptions to the general rule through which a defendant may introduce evidence of the prior sexual conduct of the victim. Evidence offered under these exceptions, however, is admissible only to the extent that the court finds it relevant and material. *State v. Jones*, 716 S.W.2d 799, 800 (Mo. banc 1986). Whether evidence is relevant is a matter for the trial court to determine, and its decision will not be reversed absent an abuse of discretion. *Gibson*, 636 S.W.2d at 958.

■ Defendant argues that he should have been able to admit evidence that B.J.B. told her cousin Bonnie Kalal, that one of her other "fathers" may have abused her. This statement was introduced into evidence. He also sought to introduce evidence that a superintendant at the Gateway School, where B.J.B. had previously been a student, was accused of child molestation. Defendant made no offer of proof regarding the Gateway School or what this evidence might have shown. Next, defendant argued that J.C., a thirteen year old boy who was friends with B.J.B., could have been responsible for her injuries. Once again, there was no offer of proof that J.C. and B.J.B. were guilty of any sexual indiscretions.

■ Defendant also wanted to introduce evidence that Joe Culkin, defendant's son, had molested other family members and had severely punished B.J.B. in the past. The offer of proof here was that Joe Culkin touched Bonnie Kalal's breast about a year before the trial and that he had touched the vaginal area of Shannon Kalal, Bonnie's sister and another cousin of B.J.B., eleven years before. There was no offer of proof regarding Joe Culkin's punishment of B.J.B. The trial court correctly found that defendant's offer of proof was deficient because the testimony of Bonnie and Shannon Kalal was neither material nor relevant since the episodes were remote in time to the present incidents. *See, State v. Hassler*, 690 S.W.2d 178, 180 (Mo.App.1985). Moreover, evidence was presented that Joe Culkin was not in town on April 3, 1987.

Lastly, defendant argues that tampons or other physical injuries could have caused B.J.B.'s injuries. Dr. Rosenbloom testified, before the jury, that a tampon could have caused the injuries to B.J.B.'s hymen ring. Since defendant's offers of proof were deficient, Point I is denied in its entirety.

Defendant's second point alleges that the trial court erred in failing to strike venireperson Larry McBride for cause because McBride's answers during voir dire indicated he would give more weight to the testimony of a police officer than he would give to other witnesses.

The trial court has wide discretion in determining the qualifications of a prospective juror and the court's ruling will not be disturbed unless there is a clear abuse of discretion. *State v. Stewart*, 692 S.W.2d 295, 298 (Mo. banc 1985). Although refusal to sustain a valid challenge for cause will result in reversible error, the trial judge is in a better position to make this determination than we are from the cold record before us, therefore, any doubts regarding the trial court's findings will be resolved in its favor. *State v. Smith*, 649 S.W.2d 417, 422 (Mo. banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).

■ An accused must be afforded a full panel of qualified jurors before he is required to use his peremptory challenges. *Stewart*, 692 S.W.2d at 298. In determining when a challenge for cause should be sustained each case must be judged on its own facts. *Id.* A venireperson who expresses partiality toward police officer testimony per se is generally not qualified to serve on the jury. *State v. Draper*, 675 S.W.2d 863, 865 (Mo. banc 1984). In estab-

lishing qualifications, however, prospective jurors' responses must be examined in light of the entire voir dire and not from an isolated response. *State v. Scott,* 699 S.W.2d 760, 766 (Mo.App.1985).

■ There was ample support for the trial court's finding that Mr. McBride could be a fair and impartial juror. Although he indicated that his friendly relationships with police officers might cause him to credit their testimony more than that of others, further questioning elicited from him the response that he would not automatically accept an officer's testimony and that he would want to hear all the testimony before making a decision. At the close of voir dire, the trial judge addressed Mr. McBride directly: "The question is whether you can evaluate a police officer's testimony the same as you would evaluate the testimony of any other witness. Do you think you could do that?" To this query, Mr. McBride responded, "Yes, sir." Thereafter, defense counsel's challenge of Mr. McBride for cause was denied. Based on the record and the trial court's superior vantage in viewing Mr. McBride's demeanor, we find no abuse of discretion. Point II is denied.

■ The third point on appeal asserts that the trial court erred in admitting the testimony of various witnesses which enhanced the credibility of B.J.B. and which were offered into evidence without a finding that the statements were reliable. The victim testified at trial. Defendant argues that the testimony of S.G., Dr. Rosenbloom, Mary Guidry, Mary Eilers, Officer Gary Guinn, Lee Ann Taylor, Diana Pranger, Agnes Kalal and the use of anatomically correct dolls amounted to improper bolstering. We disagree.

Defendant relies on *State v. Seever,* 733 S.W.2d 438 (Mo. banc 1987), in which it was held that the introduction of a videotaped statement of a child witness was so broadly duplicative of her in-court testimony that it amounted to "improper enhancement" of her testimony, and constituted a substantial departure from procedures authorized by the statute [§ 492.304.2]. *Id.* at 441. We find the situation here is more akin to

those presented by *State v. Wright,* 751 S.W.2d 48 (Mo. banc 1988) and *State v. Bereuter,* 755 S.W.2d 351 (Mo.App.1988).

The testimony of Mary Guidry, Mary Eilers, Officer Guinn, Lee Ann Taylor and Diana Pranger was admitted pursuant to § 491.075, RSMo 1986, which reads in pertinent part:

1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMO, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness.

. . . . .

4. Nothing in this section shall be construed to limit the admissibility of statements, admissions or confessions otherwise admissible by law.

The trial court held an in camera hearing to determine the reliability of the testimony. Each witness described when the statement was given and the circumstances surrounding it. The trial court determined that the time, content, and circumstances surrounding the statements made to these witnesses provided sufficient indicia of reliability for their admission pursuant to § 491.075, RSMo 1986.

The testimony was not totally duplicative of B.J.B.'s testimony because each witness described the circumstances surrounding the statements B.J.B. made to them. The statements, therefore, possessed probative value distinct from the victim's testimony. *Wright,* 751 S.W.2d at 53; *Bereuter,* 755 S.W.2d at 353. In *Seever* the jury was confronted with a videotaped statement of the victim plus the victim's in court testimony. Here, although a videotaped inter-

view was prepared, it was not introduced at trial.

Defendant attempts to distinguish *Wright,* in which all of the prior consistent statements were made within two hours of the crime. The statements here were made from one day after to approximately one month later. We are not persuaded that this fact makes the statements unreliable. We have reviewed the testimony. None of the witnesses were suggestive or leading when questioning the victim. In at least one instance, the victim volunteered to talk without any encouragement from the testifying witness. While time is a factor to be considered, taken as a whole we agree with the trial court and find that the testimony was sufficiently reliable.

■ Defendant failed to inform us as to which part of Dr. Rosenbloom's testimony he claims was received in error. We assume, since defendant did not disagree in his Reply Brief with the supposition made in the State's brief, that the following is the segment in question:

Q: Now, you say you talked with her and she related that—well, here, I don't want—what did she relate to you basically?

A: She indicated that in the past, her uncle had attempted penile penetration, and that the evening prior to her coming into the Emergency Room, he had used his finger in her genital area.

Q: Why were you interested in knowing that sort of fact or factors?

A: In order to direct my physical examination.

Dr. Rosenbloom's statements are admissible as an exception to the hearsay rule because they set forth the patient's history necessary for diagnosis and treatment and essential to the examination and care. *State v. Foster,* 501 S.W.2d 33, 36 (Mo. 1973); *State v. White,* 633 S.W.2d 173, 176 (Mo.App.1982).

Defendant argues that, even if it is admissible as an exception to the hearsay rule, the testimony should not have included an allegation of sexual abuse by defendant. We cannot see that defendant suffered any prejudice. Dr. Rosenbloom testified regarding an unnamed "uncle" and defendant's defense was that another family member was responsible for the crimes.

■ The testimony of S.G. was admissible to explain conduct. Testimony offered to explain conduct rather than prove the truth of the facts asserted is not inadmissible hearsay. *State v. Pettit,* 719 S.W.2d 474, 476 (Mo.App.1986). Mention of defendant in this testimony explains the subsequent actions of the authorities in removing B.J.B. from the home.

■ Agnes Kalal was a rebuttal witness. Her daughter, Bonnie, testified on direct examination during defendant's case that B.J.B. said she might have been raped by one of her fathers. Agnes testified that after the victim said it could have been one of her fathers, she then said she was sure her Uncle Bill did it to her. This is proper rebuttal testimony.

■ Finally, defendant's contention regarding the use of anatomically correct dolls is without merit. Demonstrative evidence, such as anatomically correct dolls, which aid the testimony of the witness and aid the jury in arriving at a correct verdict, is admissible. *State v. Swenson,* 551 S.W.2d 917, 921 (Mo.App.1977). Point III is denied.

■ In his fourth point defendant asserts that § 491.075, RSMo 1986 was unconstitutionally applied to him because the state failed to give him notice pursuant to the statute. As written the point preserves nothing for appeal because it fails to state wherein and why the trial court erred. *State v. Sanders,* 714 S.W.2d 578, 587 (Mo. App.1986). Rule 30.06(d) states that "setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule." Defendant has failed to set forth any trial court ruling.

We have reviewed for plain error pursuant to Rule 30.20 and find no evidence of manifest injustice. Point IV is denied.

Defendant's next point alleges that the trial court erred in refusing to grant his motion ordering the state to disclose or make available for interview Sandra Rundles and M.B., victim's mother and brother.

Neither of these people testified at trial. Defendant did interview Sandra Rundles prior to trial and was told he could have an additional fifteen minute interview, prior to her testifying, if she was called. Defendant did not request to interview M.B., nor did he call him to testify. We, therefore, fail to see what harm defendant suffered. Point V is denied.

Point VI alleges that the trial court erred in ordering defendant's attorney to disclose his notes from an interview with B.J.B. Defendant argues that the state failed to file a written motion requesting disclosure pursuant to Rule 25.06 and that these notes constituted attorney work product and were not subject to disclosure pursuant to Rule 25.10.

The record indicates that the state made a written request for discovery on September 22, 1987. That writing specifically requested notes of any interviews with the victim. On December 11, 1987 the state filed a written motion to the court requesting a hearing pursuant to Rule 25.06:

> [A]nd to order the defendant and his counsel to turn over to the court for in camera inspection all notes and memoranda summarizing statements of witnesses for the state or defendant that might appear, for impeachment purposes or otherwise, and upon a determination that they do not constitute work-product under S.Ct. Rule 25.10, and a finding that the request of the State is reasonable and the material and information sought is material and relevant to preparation and presentation of the State's case, to turn them over to the state said notes and summarizing memoranda so that it may adequately prepare for trial of this matter on December 14, 1987.

After an in camera examination the court directed defendant's counsel to disclose all notes of his interview of the victim.

Defendant argues that these notes are attorney work product. In criminal proce-dure the term "work product" has been narrowly defined and applies only to "opinions, theories or conclusions of defendant's attorney" and privileged communication between defendant and his attorney. *Foote v. Hart*, 728 S.W.2d 295, 298 (Mo.App. 1987). These notes were not communication between defendant and his attorney. The trial court determined that they did not constitute opinions, theories or conclusions of defendant's attorney. Defendant failed to present any argument indicating why we should overturn this ruling of the trial court.

We also find no merit in the contention that the state failed to provide notice. The fact that the state failed to use the words "pursuant to Rule 25.06" in its original request for discovery may have been a flaw but it certainly was not a fatal one. Point denied.

In his seventh point defendant claims error in the trial court's refusal to order the state to disclose, or to prohibit the state from using, confidential information from the NCIC computer in selecting and investigating potential jurors. We have reviewed the transcript and are unable to find any request for this information or a request that the state be prohibited from its use. The matter was not properly before the trial court so the point is not preserved for appeal.

Next, defendant complains that the trial court erred in refusing to submit his instruction regarding character and reputation. Two witnesses, Debra Lee Jones and Shirley Brewner, testified that defendant had a reputation in the community for truthfulness and honesty. Defendant thereafter submitted his instruction "D", which is defendant's version of MAI–CR3d 310.40 styled "Character: Traits of Character of Defendant Bearing on Guilt or Innocence," which reads:

> Evidence has been introduced concerning the reputation of defendant as to traits of character. This evidence was received because a jury may reason that a person of good character as to such traits would not be likely to commit Sod-

omy and Rape. Therefore, you should consider the evidence concerning traits of character along with all of the other evidence in the case in determining the guilt or innocence of the defendant.

If, from all of the evidence in the case, including that relating to traits of defendant's character, you are not convinced beyond a reasonable doubt that the defendant is guilty, you should acquit him. However, if, from all of the evidence in the case, including that relating to traits of defendant's character, you are convinced beyond a reasonable doubt that the defendant is guilty, you should so find even though he may have been a person of good reputation as to those traits of character.[1]

According to the Notes on Use, "A defendant may introduce evidence of his reputation as to a trait of character which would be inconsistent with the commission of the offense."

■ The character instruction must be given when the character trait in evidence tends to make it less likely that the defendant committed the crime in question. *State v. Hayes*, 295 S.W. 791, 793 (Mo. 1927). Defendant argues that honesty connotes a person who is upright and marked by strong moral rectitude. *State v. Wells*, 586 S.W.2d 354, 359 (Mo.App.1979).

■ Evidence of a defendant's reputation for honesty does not require an instruction on character in a prosecution for assault or murder but it does in a prosecution for larceny or robbery. *State v. Manning*, 682 S.W.2d 127, 131 (Mo.App.1984). Unlike larceny and robbery, rape and sodomy are physical crimes committed against another person for which there is no financial motive. *See, Hayes*, 295 S.W. at 793. We, therefore, find that defendant's reputation for honesty does not require an instruction on character in a prosecution for rape and sodomy. Point VIII is denied.

■ The defendant's ninth point on appeal alleges that the trial court erred in not sustaining his objection and in not declaring a mistrial when the state made improper remarks during closing argument.

The prosecutor has the right to argue reasonable inferences from the evidence. *State v. McDonald*, 661 S.W.2d 497, 506 (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). We reverse only for an abuse of discretion where the argument is plainly unwarranted. *Id.*

The first statement complained of "Honest people do not need alibis," was made while the prosecutor was questioning the veracity of defendant's alibi and alibi witnesses. The trial judge, while overruling defendant's objection, instructed the jury to recall the court's instruction concerning argument.[2] We, therefore, find that this argument did not have a decisive effect on the jury.

■ The second argument, "... because of his perversion he chose a little girl," was not objected to at trial. The point is not preserved for appeal. We have reviewed the statement within the context of the entire closing argument, however, and find no plain error.

■ The last argument, contained in the rebuttal portion of the state's closing argument, is as follows:

You know, he talked about that this guy, his character is honest and this, that and the other thing. Got up there and was honest, and his people said he was honest and a nice guy. What's that mean? Does that tell you he didn't do it? Does that really show you anything in this case?

I think we remember family names, like John Wayne Gacy, who got his picture taken with the President. What did

---

1. Defendant failed to include this instruction in the argument portion of his brief, in violation of Rule 30.06(e). We review the issue, however, because this is a pattern MAI–CR3d instruction. *State v. Wells*, 586 S.W.2d 354, 358–359 (Mo. App.1979). We do not, however, condone appellant's violation of the Rule.

2. That instruction, MAI–CR3d 302.06, cautioned the jury that, although the arguments "are intended to help you in understanding the evidence and applying the law, ... they are not evidence."

they do, find twenty-two boys' bodies underneath his house.

The prosecutor was rebutting defendant's argument regarding his honesty and good character. While this argument is hardly a shining example of proper closing argument, we do not think that, viewed in the context of the entire argument, it rose to the level of inflaming the passions of the jury. The issue before us is whether the trial court abused its discretion in allowing the argument. *State v. Lane*, 613 S.W.2d 669, 679 (Mo.App.1981). We find it did not. Point IX is denied.

■ Point X, that the trial court erred in allowing Lee Ann Taylor, a social worker at St. Louis Children's Hospital, to testify that B.J.B. was telling the truth, is not preserved for appeal. Defendant's brief is devoid of any page references to the transcript or legal file in his argument and, therefore, cannot be properly examined in violation of Rule 30.06(h). *State v. Cheeks*, 604 S.W.2d 30, 32 (Mo.App.1980). Additionally, defendant's argument is extremely brief, abstract and conclusory in violation of Rule 30.06(e). *State v. Jordan*, 751 S.W.2d 68, 76 (Mo.App.1988).

■ We have, however, reviewed for plain error. In view of the manner in which appellant presented this point, we were under no duty to examine the transcript to determine whether the point had any merit. As in *State v. Jordan*, supra, we elected to do so and have examined the testimony of Ms. Taylor. To the extent that her testimony appears to bolster that of the victim, B.J.B., such bolstering appears to have been effected more by defense counsel's cross examination than by the prosecutor's questions on direct examination. We find no manifest injustice in this scenario and deny the point.

■ The next point is also not preserved for appeal because defendant failed to state wherein and why the trial court erred. Rule 30.06(d). Defendant attempted to alter the point relied on in his reply brief. A reply brief may be filed but it shall not reargue points covered in the main brief. Rule 30.06(g). Neither may a defendant raise a point for the first time in a reply brief. *State v. Virgilito*, 377 S.W.2d 361, 366–367 (Mo.1964). As a corollary, whatever defendant may have intended to assert in his original point relied on, a reply brief may not be utilized to enlarge upon or change original submissions of error. *Abney v. Farmers Mutual Insurance Company of Sikeston*, 608 S.W.2d 576, 579 (Mo.App.1980).

We have reviewed the point for plain error. Both counsel attempted to make an adverse inference regarding the failure of his opposing counsel to call M.B. as a witness. The trial court sustained the state's objection and told counsel to "move on." Under the circumstances, this was the best ruling the trial court could make. We find no manifest injustice. Point XI is denied.

■ Defendant's final point alleges that § 491.015, RSMo 1986, is unconstitutional. Once again this point is not preserved for appeal for failing to state wherein and why the trial court erred. Moreover, our Supreme Court has ruled that this statute is facially constitutional in *State v. Brown*, 636 S.W.2d 929, 934 (Mo. banc 1982), *overruled on other grounds, State v. Jones*, 716 S.W.2d 799, 800 (Mo. banc 1986). The point is, therefore, denied.

Following disposition of this appeal, defendant filed a motion for remand to the circuit court and a motion for rehearing and transfer to the Supreme Court. We granted defendant's motion for remand to the circuit court for the limited purpose of allowing defendant to file a motion for new trial based upon newly discovered evidence. The motion for rehearing and transfer was held in abeyance.

Appellant's motion for remand was to move for a new trial based on newly discovered evidence, that is, B.J.B.'s recantation of her trial testimony. In her affidavit, which accompanied the motion for remand, B.J.B. stated:

1. William Culkin is not the person who sexually molested and/or assaulted me on April 3, 1986, between March 30, 1987 and April 2, 1987, or at any other time.

2. William Culkin is not the person who committed acts of sodomy upon me on April 3, 1986 and between March 30, 1987 and April 2, 1987, and is not the person who raped me between March 30, 1987 and April 2, 1987.

3. My identification of William Culkin as the person who molested and/or sexually assaulted me on April 3, 1986 and between March 30, 1987 and April 2, 1987, was not the truth, and my testimony in the case of State of Missouri v. William Culkin, No. 87–01064, that William Culkin was the person who sexually molested and/or assaulted me was not true.

5. I falsely identified William Culkin as the person who sexually molested and/or assaulted me because I thought such an identification would encable (sic) me to live with my mother.

The trial court conducted its hearing on July 13, 1989 and September 7, 1989. During the hearing, the trial judge appointed an assistant public defender to represent B.J.B. After consulting with counsel, B.J.B. indicated that she would invoke her Fifth Amendment privilege against self-incrimination if asked any questions regarding her recantation. Defendant requested immunity from prosecution on behalf of B.J.B., but the request was denied.

The original investigating officer, Gary Guinn, testified that he went to Wickliffe, Kentucky, to interview B.J.B. and her mother after their affidavits were filed. The interview was tape recorded. Guinn told them that the affidavits were not enough to free defendant; it would be necessary for them to return to St. Louis and testify in court. He also informed them that prosecution could result if they had testified untruthfully, either at trial or in the affidavits. During the interview, both Ms. Rundles and B.J.B. admitted the affidavits were false. Ms. Rundles stated that the family was hurting and "[w]e want our family back together."

On November 3, 1989, the trial court issued a memorandum and order denying defendant's motion for a new trial. Defendant took a new appeal from this order.

On this court's own motion, defendant's appeals were consolidated on December 22, 1989.

Defendant raises two additional points in this new appeal. He argues that the trial court erred in failing to grant a new trial based on newly discovered evidence because (1) it erred in determining B.J.B.'s recantation was not credible, and (2) it erred in failing to grant B.J.B. immunity from prosecution.

■■■ Defendant must establish the following in order to receive a new trial based on newly discovered evidence: 1) the evidence has come to the knowledge of the defendant since the trial; 2) it was not owing to want of due diligence that it was not discovered sooner; 3) the evidence is so material that it would probably produce a different result on new trial; and, 4) it is not cumulative only or merely impeaching the credit of a witness. State v. Amrine, 741 S.W.2d 665, 674 (Mo. banc 1987).

■■■ Defendant's argument assumes that the trial court had a duty to believe B.J.B.'s affidavit over her trial testimony. This is not true. Whether a new trial should be granted on the ground of recanted testimony depends on all the circumstances of the case and the trial court is given substantial discretion in deciding if it should be granted. Id. Recanting testimony is exceedingly unreliable and is regarded with suspicion; and it is the right and duty of the court to deny a new trial where it is not satisfied that such testimony is true. State v. Galardo, 654 S.W.2d 360, 362 (Mo.App.1983).

■■■ The trial court noted that the testimony at the hearing consisted of hearsay concerning statements made by the victim at various times before and after the trial. As stated, supra, B.J.B. invoked her privilege against self-incrimination leaving the trial court with only her affidavit and the aforementioned out of court statements on which to base its judgment. The trial court was unable to find that B.J.B.'s recantation was credible or that it was sufficient to overturn the jury verdict. This finding is correct based on the evidence before the trial judge.

This is not the first time B.J.B. has made an inconsistent statement regarding this incident. There was evidence before the jury that B.J.B. identified "one of my fathers" as the molester. Her post-trial recantation is simply another inconsistent statement. It would not necessarily produce a different result on new trial and, because B.J.B. refused to testify in person, merely impeaches trial testimony. *Amrine*, 741 S.W.2d at 674. The trial court declined to substitute its judgment for that of the jury. We agree and deny the point.

■ Defendant next asserts that the trial court erred in failing to grant B.J.B. immunity from prosecution. He argues that while the courts and prosecuting authorities in Missouri have no specific statutory authority to grant immunity, the courts do have inherent authority to prevent miscarriages of justice. Pursuant to this inherent power, defendant contends, the courts may immunize a recanting witness to allow that witness to step forward with the truth without fear of being prosecuted for perjury.

In Missouri, neither prosecutors nor judges have power to grant immunity. *Brown v. City of North Kansas City*, 779 S.W.2d 596, 598 (Mo.App.1989). Offering immunity is dangerous in that it constitutes a clear invitation to witnesses to commit perjury. *State ex rel. Munn v. McKelvey*, 733 S.W.2d 765, 769 (Mo. banc 1987). Given that the power to grant and obtain immunity is subject to abuse, it does not inhere in any office. The authority is only granted by the legislature after much deliberation and careful drafting of legislation. *Id.*

The trial court, therefore, had no authority, inherent or otherwise, to grant B.J.B. immunity from prosecution. Defendant's arguments are meritless.

The judgment of the trial court is affirmed in all respects.

SMITH, P.J., and SATZ, J., concur.