Sharon HIGGINS, Appellant,

v.

D.W.F. WHOLESALE FLORISTS, Respondent.

No. WD 57304.

Missouri Court of Appeals, Western District.

March 28, 2000.

---

Thomas Stein, Jr., Kansas City, for appellant.

Mark Randall Rudoff, St. Louis, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge VICTOR C. HOWARD and THOMAS H. NEWTON.

LAURA DENVIR STITH, Presiding Judge.

Sharon Higgins sought relief under Missouri's Worker's Compensation Law for injuries sustained by her in an automobile accident which she claimed occurred out of and in the course of her employment. After a hearing, Chief Administrative Law Judge Kenneth J. Cain denied Ms. Higgins' claim for relief, finding that she failed to meet her burden of proving the injuries she sustained were job-related, and that her employer made a sufficient showing to support a finding of forfeiture of benefits under Section 287.120.6 RSMo 1994. Judge Cain's decision was affirmed by the Labor and Industrial Relations Commission. Because we find competent and substantial evidence exists on the record to support the Commission's decision, and as its findings are not against the overwhelming weight of the evidence on the record as a whole, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Higgins was an assistant manager of the Kansas City office of Denver Wholesale Florists ("DWF"). She was involved in an automobile accident on eastbound Interstate 70, between 27th Street and 31st Street, at approximately 10:30 p.m. on the evening of July 8, 1991. The accident occurred as Ms. Higgins was returning home from the Victorian Restaurant, where she had eaten, and where she drank at least 10 beers between approximately 4:30 p.m. and 9:30 p.m. As a result of the accident, Ms. Higgins sustained injuries to her left shoulder, left elbow, right knee and right ankle.

Ms. Higgins began working at DWF in the early 1980's. At that time and during the course of her employment, the company had in place a series of alcohol policies. As shown in the record, the oldest of these policies was set out in the employee handbook received by every employee who joined the company. Ms. Higgins acknowledged she received the handbook when she joined the company. In 1990, the company disseminated its "Company Safety Policy, Safety Rules and Practices," the ninth clause of which stated, "[t]he use of alcohol or illegal drugs on the job or

prior to reporting to work is prohibited." While Ms. Higgins later testified that she did not know whether she had actually read this or the earlier alcohol policy, she admitted that she had received the 1990 policy and signed an acknowledgement that she had received it on March 16, 1990. That acknowledgment stated in relevant part, "I am proud to be employed by Denver Wholesale Florists and will abide by their safety regulations and practices."

At some point in 1990 or earlier, Ms. Higgins was promoted to the position of manager of DWF's Kansas City office. According to her testimony, and that of DWF Vice–President David Lynn Gaul,[1] as manager of the office Ms. Higgins was charged with the responsibility of posting the company's alcohol policy on the office's bulletin board. Ms. Higgins was demoted from manager to assistant manager in December of 1990.

The company modified its alcohol policy at the end of 1990 or beginning of 1991, and, on January 9, 1991, Ms. Higgins signed another document indicating receipt of the company's drug and alcohol policy. The 1991 acknowledgement stated, in relevant part:

### ACKNOWLEDGEMENT

I have received a copy of The Denver Wholesale Florists Drug and Alcohol Policy and understand that in order to continue my employment with this company I must abide by the terms of this policy.

Again, Ms. Higgins said she did not recall whether she had actually read the policy, but admitted signing the acknowledgement.

Ms. Higgins' involvement with Missouri State Floral Association ("MSFA"), began prior to her employment with DWF. MSFA held two conventions each year. One of these conventions was a tri-state convention for MSFA members from Nebraska, Missouri, and Kansas ("NEMOK-AN"). In 1991, without being encouraged or required to do so by DWF, Ms. Higgins continued her participation in MSFA and was elected as a committee chairperson for NEMOKAN. Part of her duties on this committee required that she assist in the planning of an upcoming NEMOKAN convention. It was in this capacity that she chose to meet after work with some colleagues from other florists on July 8, 1991, at the Victorian Restaurant, to plan the convention's stage decorations.

As noted earlier, during the meeting, Ms. Higgins consumed 10 beers, the last of which she drank just before leaving the restaurant. While driving home from the restaurant, along substantially the same path she normally took to get home, Ms. Higgins rear-ended another car. The police arrested Ms. Higgins for driving while intoxicated because of her demeanor and the odor of alcohol on her breath. With her consent, a blood sample was later drawn and submitted to a laboratory for testing. The laboratory results indicated that her blood alcohol content was .24. Ms. Higgins pleaded guilty to the offense of driving while intoxicated, which resulted in the temporary loss of her driver's license.

Ms. Higgins filed a worker's compensation claim against DWF to recover her medical expenses resulting from the injuries she sustained in the accident. After a hearing, Judge Cain denied her claim, finding that Ms. Higgins failed to meet her burden of proving that her accident was job-related. Additionally, Judge Cain found that DWF had proved that Ms. Higgins' intoxication was the proximate cause of the accident, as a result of which Ms.

---

1. Mr. Gaul is presently the Vice–President of Sales and Marketing for DWF. At the time of the matters to which he testified regarding the posting of the company's alcohol policy in 1991, Mr. Gaul was the company's subsidiary manager. In the latter position, his responsibility was to oversee 14 of the company's subsidiaries, which included the Kansas City office.

Higgins' right to worker's compensation benefits was forfeited. The Labor and Industrial Relations Commission ("the Commission") affirmed. This appeal followed.

## II. STANDARD OF REVIEW

We review the Commission's decisions on questions of law *de novo*. *Davis v. Research Medical Center*, 903 S.W.2d 557, 561 (Mo.App. W.D.1995). Where, as here, it is claimed that the evidence was not sufficient to support the Commission's decision, we use a two-step analysis to review that decision. First, we examine the record in the light most favorable to the Commission's decision, *Id.* at 565, disregarding evidence contrary to the Commission's decision, to determine whether the decision is supported by substantial and competent evidence. *Id.* at 566. If we find that the Commission's decision is supported by substantial and competent evidence, we then examine the record as a whole to determine whether the decision is contrary to the overwhelming weight of the evidence. *Id.* at 565. Where, as here, "the Commission affirms or adopts the findings and award made by the ALJ before whom the witnesses in the case testified in person, the resulting consistency, especially as concerns credibility determinations, is a powerful factor in favor of upholding the Commission's award on appeal." *Id.* at 571.

## III. LEGAL ANALYSIS

Ms. Higgins' sole Point Relied On challenges the decision below by claiming there was sufficient evidence to show that her injury arose out of and in the course of her employment with DWF under the mutual benefit doctrine. Even were we to agree with Ms. Higgins on this issue, however, it would not entitle her to reversal, for the Commission also denied her claim on the basis that the injury was caused by her use of alcohol in violation of a company alcohol policy, and Section 287.120.6 RSMo 1994 provides that in such a case the em-

ployee's right to benefits shall be forfeited. Because Ms. Higgins failed to raise any claim of error in regard to the court's ruling on the application of Section 287.120.6 in her Point Relied On, she failed to preserve that issue for appeal. Rule 84.04(d); *State v. Culkin*, 791 S.W.2d 803, 813 (Mo.App. E.D.1990).

Our review of the argument section of Ms. Higgins' brief reveals that she does argue that Section 287.120.6 was not fully complied with in that her employer failed to properly post its alcohol policy in the manner required by the statute. For this reason, we *ex gratia* review the issue of forfeiture under Section 287.120.6 for plain error. Accordingly, "as permitted by Rule 84.13(c), [we] will look to the argument portion of the brief to determine if there was plain error affecting substantial rights which, though not preserved, resulted in manifest injustice or miscarriage of justice." *Decker v. National Accounts Payable Auditors*, 993 S.W.2d 518, 522 (Mo. App. S.D.1999). We find no plain error, for the reasons described below.

Generally, all employers subject to Chapter 287 must, in accordance with the provisions of that chapter, provide compensation for "personal injury or death of [their employees] by accident arising out of and in the course of [their] employment." Sec. 287.120.1. Missouri statutes relieve an employer from the duty of providing such compensation in limited circumstances, however, including when the employee seeking benefits violates a known and posted alcohol policy of his or her employer and that violation is a proximate cause of the injury. Specifically Section 297.120.6 provides:

> 6. (1) Where the employee fails to obey any rule or policy adopted by the employer relating to the use of alcohol or nonprescribed controlled drugs in the workplace, which rule or policy has been kept posted in a conspicuous place on the employer's premises, the compensation and death benefit provided for here-

in shall be reduced fifteen percent if the injury was sustained in conjunction with the use of alcohol or nonprescribed controlled drugs; provided, that it is shown that the employee had actual knowledge of the rules or policy so adopted by the employer and, provided further that the employer had, prior to the injury, made a diligent effort to inform the employee of the requirement to obey any reasonable rule or policy adopted by the employer.

(2) If, however, the use of alcohol or nonprescribed controlled drugs in violation of the employer's rule or policy which is posted and publicized as set forth in subdivision (1) is the proximate cause of the injury, then the benefits or compensation otherwise payable under this chapter for death or disability shall be forfeited. The forfeiture of benefits or compensation shall not apply when:

(a) The employer has actual knowledge of the employee's use of the alcohol or nonprescribed controlled drugs and in the face thereof fails to take any recuperative or disciplinary action; or

(b) As part of the employee's employment, he is authorized by the employer to use such alcohol or nonprescribed controlled drugs.

Sec. 287.120.6.

■ We turn our analysis to whether the evidence supported the Commission's finding that this statute applied and Ms. Higgins' right to compensation was forfeited. In so doing, we examine the record to determine whether there was evidence that (1) Ms. Higgins failed to obey a rule or policy adopted by her employer relating to the use of alcohol; (2) the rule was posted in a conspicuous place; (3) she had actual knowledge of the rules or policy so adopted; (4) her employer prior to the injury made diligent effort to inform her of the requirement to obey the rule, and (5) the violation of the rule was the proximate cause of her injury.

■ The record is clear that requirements (1), (3), (4) and (5) were complied with. While Ms. Higgins said she did not remember whether she had ever read any of her employer's alcohol policies adopted over her years of employment, she admitted that she had actual knowledge that her employer had an alcohol policy and that her use of alcohol on the occasion of the accident violated that policy. Moreover, the record shows that, on three occasions prior to the accident, Ms. Higgins was provided with a statement by her employer setting out its policy with regard to alcohol consumption, and that she acknowledged receiving each of these statements. Ms. Higgins was first informed about the alcohol policy in the employee handbook she received upon joining the company. Section II of the employee handbook stated:

> To insure a safe and productive work environment, the Company strictly prohibits the use, sale, transfer, distribution, or possession of alcohol ... on any Company premises or worksites. The Company will utilize pre-employment substance screening as part of the selection and hiring process. All employees will be subject to testing after a work related accident or upon reasonable suspicion. Further information can be obtained from the official Drug/Alcohol Policy in the Personnel Department.

The employee handbook also described in Section IV:

> Some examples of major offenses or misconduct that could result in immediate discharge are:
>
> . . .
>
> e. Use of alcoholic beverages during work hours or lunch breaks.

In addition, on March 16, 1990, she received her employer's one-page "Company Safety Policy and Safety Rules and Practices," clause 9 of which stated that "The use of alcohol or illegal drugs on the job or prior to reporting to work is prohibited." At the bottom of this form was an ac-

knowledgement of receipt which Ms. Higgins did sign.

On January 9, 1991, she received an even more detailed alcohol use policy from her employer, and again signed an acknowledgement of receipt. That policy stated that to insure a safe and productive work environment:

> the Company strictly prohibits the use, sale, transfer, distribution or possession of alcohol, drugs, or controlled substances on any Company premises or worksites. In addition, the Company strictly prohibits any employee from reporting for or being at work while *under the apparent influence of alcohol ...*

(emphasis added). The Policy then defines "under the apparent influence" as:

> Being unable to perform work in a safe and productive manner, being in a physical or mental condition which creates a risk to the safety and well-being of the individual, other employees, the public, or Company property; and or blood alcohol levels in excess of .05 percent.

In addition, the evidence showed that Vice–President Gaul testified that the managers at all DWF locations were required to distribute the policy to all their respective employees, and to secure from them a signed form acknowledging receipt which would be sent back to the company's corporate office to be placed in each employee's personnel file. Ms. Higgins was aware of this practice and stated that she knew these documents acknowledging receipt of statements of company policy would be retained in her personnel file. Finally, Mr. Gaul also testified that the company required all managers to post the policy on the bulletin board at each of their locations. While he did not personally see the alcohol policy posted at DWF's Kansas City location, he testified to seeing it posted at a number of other company subsidiary locations during his tenure as subsidiary manager. Based on this evidence, the Commission could certainly find that Ms. Higgins had actual knowledge of the policy and that the employer made diligent efforts to inform her of her obligation to comply with it, thus fulfilling factors (3) and (4) above.

The first factor is also clearly complied with, for, assuming for present purposes only that Ms. Higgins is correct that her meeting at the Victoria Restaurant arose out of and in the course of her employment at DWF, she admitted that her consumption of 10 beers at that meeting was a clear violation of her employer's alcohol policy.

In addition, there was sufficient evidence that the use of alcohol was the proximate cause of the injury to satisfy factor (5) under the statute. Ms. Higgins admitted that at the time of the July 8, 1991 accident her blood alcohol content was .24 and that this exceeded both the legal limit in Missouri (.10) and the limit imposed by her employer (.05). Because of her condition at the time of the accident, she was arrested and subsequently pleaded guilty to the offense of driving while intoxicated which resulted in the temporary revocation of her driver's license. In addition, DWF introduced a report from William A. Watson, PharmD, that Ms. Higgins' alcohol consumption that evening was a significant contributing factor to the automobile accident, a conclusion which Ms. Higgins does not challenge on appeal. This constituted competent and substantial evidence supporting the Commission's conclusion that Ms. Higgins' use of alcohol was the proximate cause of the injuries she sustained from the accident.

Ms. Higgins claims, however, that her employer failed to prove it posted the policy, and thus, although the bulletin board was admitted to be a conspicuous place, it thereby failed to meet the posting requirement of the statute. As she notes, the evidence was that the company usually posted these notices on bulletin boards in the break room of their places of business and that the notices should have been posted in the Kansas City office, but the officer testifying had not visited the Kansas City office and inspected the bulletin

board personally. He testified without objection, however, that another Kansas City employee found the 1990 policy posted on the bulletin board, took it off the board and sent it to him. While Mr. Gaul had no personal knowledge as to whether the policy had been posted at the time of the accident, the fact it was required to be posted there and was found there after the accident could have supported an inference that it was posted at the time of the accident.

Moreover, at the time the 1990 notice was required to be posted, and possibly at the time the latest notice was prepared and ordered to be posted,[2] Ms. Higgins was actually the manager of the Kansas City office. As the manager, it was Ms. Higgins' personal responsibility to see that the notices were posted on the bulletin board. Therefore, if the company's alcohol policy was not posted, it would only have been due to her failure to fulfill her duty to post it. As Judge Cain said below in denying Ms. Higgins claim:

> Assuming that the alcohol policy was not properly posted prior to the accident, it was due to Claimant's own failure to follow directions as the manager of the plant. Claimant, as the manager and who admitted to actual knowledge of the alcohol policy, may not be allowed to benefit by her own failure to post a policy she was directed to post. Otherwise, a person in a management position charged with posting the alcohol policy could intentionally not post the policy and, therefore, never be penalized for drinking on the job if they sustained an accident.

We agree with this analysis.

Furthermore, we note that *Davis v. Roadway Exp., Inc.,* 777 S.W.2d 668, 670 (Mo.App. S.D.1989), held that "[s]tatutes that impose certain technical requirements for notice should not be strictly enforced where *the party seeking enforcement had actual notice* and cannot show prejudice as a result of the failure to follow the technical requirements." *Id., quoting, Macon–Atlanta State Bank v. Gall,* 666 S.W.2d 934, 940 (Mo.App. W.D.1984) (emphasis added). The issue in *Roadway* was whether a notice was posted in a sufficiently conspicuous place. The Court stated that the posting of the policy constitutes *"only* constructive notice," as opposed to the actual notice the employee had based on his knowledge of the policy. *Id.* at 670 (emphasis added). The Court found that actual notice was sufficient in that situation. *Id. See also Macon–Atlanta,* 666 S.W.2d at 940 (court found that since the mortgagor "had actual notice for more than the statutory period, . . . and has failed to show any prejudice from the lack of receiving the written notice by registered mail required by Section 443.325(3), the Bank's failure to comply with the notice requirement was not a substantial irregularity requiring the sales be set aside").

 Here, as in the above cases, Ms. Higgins did have actual knowledge of this policy prior to the accident. Therefore, even assuming this policy was not timely posted, such a technical violation would not bar application of Section 287.120.6 in light of Ms. Higgins' actual knowledge of the policy and her failure to demonstrate any evidence of prejudice resulting from any failure to strictly adhere to the statute's posting requirement.[3]

For these reasons, we find competent and substantial evidence exists on the rec-

2. The evidence was ambiguous and inconsistent as to whether she had already been demoted by the time that this final version of the alcohol policy was first prepared.

3. We note that even where, as here, the requirements for forfeiture of benefits set out in Section 287.120.6 are met, forfeiture of benefits will not be ordered if the employee shows either (1) that the employer had actual knowl-

edge of their employee's use of alcohol but failed to take any disciplinary action or (2) that the employee was authorized to use alcohol as part of his or her employment. Sec. 287.120.6(2)(a-b). While Ms. Higgins argued below that one or both of these exceptions applied, she does not so argue in this Court. Indeed, in light of DWF's statements regarding its alcohol policy and the efforts it took to ensure all of its employees knew of the policy,

ord to support a finding that Ms. Higgins' right to compensation has been forfeited in light of the circumstances surrounding her violation of the company's alcohol policy. Furthermore, we find the Commission's decision was not against the overwhelming weight of the evidence on the record as a whole. Accordingly, the decision of the Commission is affirmed.

Judges VICTOR C. HOWARD and THOMAS H. NEWTON Concur.

she would be hard-pressed to make a credible argument that she was authorized to use alcohol as a part of her employment. And, while she did present evidence that she drank during various meetings at which other company personnel or managers were present, she did not show that she drank enough on those occasions to become under the influence in violation of company policy, or that she drank while on the job as opposed to during after-work dinners or other gatherings which were more in the nature of social rather than business gatherings. Certainly, the Commission could have disbelieved some or all of her claims of drinking with managers or other employees at restaurants, and could have found from the evidence that the employer was not previously aware that she used alcohol to an extent or at times that violated company alcohol policies.