Raymond LaGUE and Nancy LaGue, Husband and Wife, Plaintiffs–Respondents,

v.

FARMERS AND MERCHANTS INSURANCE COMPANY, Defendant–Appellant.

No. 16076.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 28, 1989.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 17, 1989.

David W. Ansley, James B. Condry, Hall, Ansley, Carmichael & Gardner, Springfield, for plaintiffs-respondents.

Dale L. Davis, Bussell, Hough, O'Neal, Crouch & Hall, Springfield, for defendant-appellant.

## PER CURIAM.

This is a fire loss case. Defendant, Farmers and Merchants Insurance Company (Farmers), appeals from a judgment entered in the sum of $97,881.50 in favor of plaintiffs, Raymond LaGue and his wife, Nancy. The judgment was a modification of a jury verdict which plaintiffs, on their own motion, admitted was excessive in that it awarded them damages in excess of those allowable by law in cases of this nature.

On appeal, among its nine points relied on of claimed trial court error, Farmers contends that the trial court prejudicially erred in permitting Nancy LaGue to testify, during her direct examination in plaintiffs' case in chief and over the continued objection of Farmers, concerning fund raising activities that she had performed for charitable purposes, and concerning the approval by Missouri Department of Family Services of Raymond and Nancy as foster parents, because such testimony was irrelevant to any issue in the case, self-serving, and highly prejudicial. We agree, and reverse and remand.

The basic facts concerning the point in issue are as follows. The LaGues owned and lived in a mobile home in Taney County, Missouri that Farmers insured against a number of perils, including fire. On November 11, 1986, the mobile home and most of its contents were destroyed by fire. The fire broke out a few minutes after the LaGues left the premises, and no one else was seen in the vicinity immediately before or after the fire. In their proof of loss, in which they sought the policy limits for the dwelling, contents, and loss of use, the LaGues stated that the cause of the fire was unknown to them.

Farmers' investigation indicated that the fire was of incendiary origin, and it started in one of the bedrooms where flammable liquid burn patterns were visible on the carpeting, which carpet had an odor similar to gasoline. Carpet samples sent to an independent testing laboratory confirmed the presence of gasoline residue on two of the samples. Further investigation revealed that the LaGues had recently suffered severe financial losses connected with the failure of a restaurant business, and were facing heavy medical and other bills. Based on their investigation, Farmers denied coverage on the primary basis that the LaGues had made material misrepresentations in their proof of loss when they stated they had no knowledge as to how the fire started.

The LaGues then sued Farmers, seeking damages for the policy limits on the dwelling, contents, and loss of their use, as well as interest on that sum, and damages for vexatious refusal by Farmers to pay their claim, plus attorneys fees. In their answer, Farmers asserted as an affirmative defense the material misrepresentation by the LaGues in their proof of loss concerning the cause of the fire, as well as stating other defenses not relevant here.

Prior to trial, Farmers filed a motion in limine requesting that the trial court prohibit testimony from any witness concerning the LaGues' "good character" prior to the time of the fire. That motion was overruled. At trial, Nancy LaGue testified, over the continuing objection of Farmers

that the testimony to be given was irrelevant, self-serving, and highly prejudicial, that in the past she had conducted benefits and garage sales to help pay the medical expenses of a cancer victim who lived in the community, had organized a benefit from which proceeds were used to buy Christmas presents for foster children, and that she and Raymond, after an investigation by the Missouri Division of Family Services, had been approved by the Division as foster parents, and had served as foster parents with the Division's approval.

■■■ Allowing this type of testimony to be given as part of the plaintiffs' case was error for two reasons. The first is that in a suit on a fire policy, it is improper to introduce evidence of good character, general or specific, as part of a plaintiff's proof to counter the affirmative defense of an insurance company that the fire in question was intentionally set by the insureds, and that the insureds made material misrepresentations in their proof of loss when they stated that they did not know how the fire started. *Wood v. General Ins. Co. of America*, 229 Mo.App. 296, 77 S.W.2d 167, 168 (1934). The holding in *Wood* is buttressed by the holding in *Ackerman v. Watson*, 690 S.W.2d 498, 499 (Mo.App. 1985), where the appellate court stated, "even where false representations are in issue, evidence of good character is not generally admissible." The Ackerman court applied an exception to the general rule by holding that general reputation character evidence favorable to the defendant was admissible, but only after the defendant's character had been placed in issue by plaintiffs in their case in chief. Such was not the case here.

The legal rationale behind the holdings of *Wood* and *Ackerman* should be evident. The interspersing of the collateral issue of character into civil controversies carries dangerous baggage such as distraction from the main issue, and probable prejudice. *Farley v. Johnny Londoff Chevrolet, Inc.*, 673 S.W.2d 800, 803 (Mo.App. 1984); McCormick, *Evidence*, § 188 (3rd ed. 1984). There is no doubt but that the challenged testimony was evidence of the

LaGues' prior good character. What else could one rationally call testimony regarding charitable good deeds to aid afflicted persons and disadvantaged children? Even if one were to assume that the LaGues' character had been placed in issue by the pleadings, which we do not, the LaGues would not have been able to give testimony concerning specific acts of good conduct on their part to counteract defendant's pleading allegations. If character evidence is permissible for any purpose, such as charges of libel or slander where damage to character or reputation is an issue, only general testimony concerning the person's *reputation in the community in which he resides* is admissible, with limited exceptions to that rule. Examples of those exceptions are: (1) inquiry on cross-examination of a witness who has testified concerning a party's general reputation, if the witness had heard rumors of defendant's misconduct because if such were true, it could be considered inconsistent with previous assertions of good character, *State v. Siems*, 535 S.W.2d 261, 264 (Mo.App.1976), and (2) circumstances where a particular trait of character is an issue in the case which can be proven by specific acts. *Durbin v. Cassalo*, 321 S.W.2d 23, 26 (Mo.App. 1959); Mo. Evidence Restated, Sec. 405 (MoBar 1984). In those limited areas, specific instances of conduct may be inquired about, but neither situation exists here.

The fact that there was evidence, self-serving as it was, that the LaGues were previously persons of good character does not indicate that they were not responsible for the fire in question. Since it did not, such evidence only served to confuse the issue of whether the LaGues had intentionally set the fire, and to incite sympathy for the LaGues in the minds of the jury. *Williams v. Bailey*, 759 S.W.2d 394, 397 (Mo.App.1988).

■■ In their respondent's brief, the LaGues argue that even if we find that it was error for the trial court to admit the testimony in question, the error is not prejudicial. We do not agree. The fact that the jury returned a verdict in excess of the amount permitted by law, including sub-

stantial punitive damages and attorneys fees, is strong evidence that the jury verdict was influenced by sympathy arising from the testimony in question. The trial court committed prejudicial error in permitting Nancy LaGue to testify concerning her charitable activities and the approval of the LaGues as foster parents by the Division of Family Services.

Since reversal is mandated in this case for the reason stated, there is no need to discuss the possible problems inherent in some of the other eight allegations of claimed error raised by Farmers, other than to say we have fully examined Farmers' contentions raised in its points of claimed error two, five, and six that it was entitled to judgment on the pleadings and/or a directed verdict in its favor and have determined, on the basis of the present record, that such contentions are without merit.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

All concur.