**STATE of Missouri, Respondent,**

v.

**Todd JAMES, Sr., Appellant.**

**No. 62874.**

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 18, 1994.

John A. Klosterman, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Traci J. Sanders, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals his convictions for first degree assault and armed criminal action. We reverse and remand.

Viewed in the light most favorable to the verdict, the evidence adduced at trial was as

follows: On November 26, 1990, Randall Ceasar was staying with his sister, Paula James and her husband, Defendant. At about 10:30 p.m., Defendant went out with his friend, Dr. Jerome Woodson. Around 12:45 a.m., Ceasar heard the door slam and then heard Defendant and Paula talking loudly in the kitchen. Ceasar got up out of bed and walked to the kitchen. As he was approaching the kitchen, he heard Paula say something about Defendant's drinking. Defendant passed Ceasar in the small hallway and Ceasar could smell alcohol on Defendant's breath. After making sure Paula was all right, Ceasar returned to bed. A few minutes later, Paula came into Ceasar's bedroom and asked for the keys to his car. Ceasar refused but offered to drive Paula wherever she needed to go. Paula left the room and Ceasar dozed off. He was awakened a few minutes later by the sound of a gunshot. As he got out of bed, he heard another shot. He opened his bedroom door and saw Paula fall to the ground. Defendant pointed the gun at Ceasar and pulled the trigger three times but nothing happened. Defendant ran and Ceasar attempted to chase him but tripped. Ceasar returned to the apartment and called for help.

After leaving the apartment, a security guard spotted Defendant at a nearby apartment complex in a stairwell. The guard later saw Defendant walking in front of the guard's car and told him to stop. The Defendant ran and the guard pursued him. After losing sight of Defendant for a few minutes, the guard saw him for a third time and ordered him to stop. Defendant stopped this time. The guard handcuffed Defendant to a railing and conducted a search, which produced the revolver. The guard noticed that Defendant smelled of alcohol and had defecated in his pants.

The police arrived and placed Defendant under arrest. The arresting officer also noticed the Defendant had defecated on himself. The officer returned Defendant to the crime scene where he was identified by Ceasar.

A jury convicted Defendant of assault in the first degree and armed criminal action. Defendant was sentenced to twenty years for the first count and five years for the second count, with sentences to run concurrently.

Defendant's sole point on appeal alleges the trial court erred in submitting Instruction No. 12, patterned after MAI–CR3d 310.50 (repealed 1993), which provided: "You are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct."

We first note *State v. Erwin*, 848 S.W.2d 476 (Mo. banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993) is inapplicable in this case. *Erwin* held an instruction patterned after MAI–CR3d 310.50 should not be given because it "implicitly relieves the State of the burden of proving beyond a reasonable doubt that [defendant] possessed the requisite mental state for the crime charged." However, this holding was explicitly limited to cases tried in the future or cases now on appeal where this objection was specifically made. *Id.* Defendant's case was tried prior to the *Erwin* decision, and Defendant did not object to Instruction No. 12 on these grounds. Therefore, the holding in *Erwin* is inapplicable to this case. *Id. See also, State v. Dillon*, 869 S.W.2d 67 (Mo.App. W.D.1993); *State v. Ottwell*, 852 S.W.2d 370, 372[2] (Mo.App.1993).

Although *Erwin* is inapplicable, Defendant argues Instruction No. 12 was improper because there was no evidence of Defendant's impairment. The Notes on Use following MAI–CR3d 310.50 state:

> If there is no evidence of involuntary intoxication and it may fairly be inferred from the evidence that the defendant was intoxicated or drugged to such an extent that his judgment and actions were substantially affected thereby, or that his capacity to know or appreciate the nature, quality, or wrongfulness of his conduct was significantly impaired by reason of intoxication, this instruction may be given by the Court on its own motion and must be given upon written request in proper form by the state or by the defendant. *Even though there is evidence of consumption of alcohol or drugs, if there is no evidence from which such impairment could be inferred, this instruction may not be given over the*

*objection of the defendant.* (emphasis added).

Here, the State requested the instruction and the Defendant objected. Therefore, the question is whether there was evidence from which impairment could be inferred. The judge found there was enough evidence to infer impairment because there was testimony that: Defendant was drinking scotch, he smelled strongly of alcohol, and he defecated on himself. We disagree.

 Rule 28.02 requires both "error" in submitting the instruction and prejudice to the defendant before an appellate court may reverse the trial court's decision based on an error in the jury instructions. *State v. Green,* 812 S.W.2d 779, 786[7] (Mo.App.1991), *citing* Rule 28.02(c) and (f).

■ Instruction No. 12 was erroneously submitted to the jury. The only evidence in the record from which impairment could be inferred was: (1) Ceasar's testimony that Defendant and Paula were arguing prior to the shooting and Paula complained about Defendant's drinking, (2) testimony from Ceasar and the security guard that Defendant smelled of alcohol, (3) testimony from Ceasar and Dr. Woodson that Defendant had been drinking on the night of the shooting, and (4) testimony from the guard and the arresting officer stating Defendant had defecated on himself.

No other evidence was offered to indicate Defendant was impaired by alcohol, nor did Defendant attempt to defend this case on the grounds he was intoxicated. Evidence of drinking and defecation alone is insufficient to infer impairment as required by the Notes on Use following MAI–CR3d 310.50. The giving of an instruction in violation of the Notes on Use constitutes error. *State v. Livingston,* 801 S.W.2d 344, 348[3] (Mo. banc 1990).

■ Defendant was also prejudiced by the submission of Instruction No. 12. Prejudice as used in connection with erroneous jury instructions, is defined as the potential for misleading or confusing the jury. *Green,* 812 S.W.2d at 787[10]. Here, the likelihood the jury was confused or misled is high. Defendant did not attempt to defend the charges against him by arguing he was intoxicated. Rather, he argued he was not the one who committed the shooting. Since Defendant did not raise the issue of intoxication or impairment, submitting Instruction No. 12 was likely to have confused the jury or misled them to believe Defendant admitted to some wrongdoing and was attempting to escape liability based on intoxication. This instruction may have impermissibly lightened the State's burden of proving beyond a reasonable doubt that Defendant committed the crimes charged. *See, Erwin,* 848 S.W.2d at 484[15] (holding MAI–CR3d 310.50 implicitly relieved the State of proving an element of an offense as established by the legislature and violates due process).

Judgment is reversed and the case is remanded for a new trial consistent with the findings in this case.

CRANDALL, P.J., and REINHARD, J., concur.