STATE of Missouri, Plaintiff–
Respondent,

v.

John L. GATELEY, Defendant–Appellant.

John L. GATELEY, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 18236, 19783.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 12, 1995.

Motion for Rehearing or
Transfer to Supreme Court Denied
Sept. 29, 1995.

Robert D. Lewis, Lewis & Aiken, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Traci J. Sanders, Asst. Atty. Gen., Jefferson City, for respondent.

GARRISON, Presiding Judge.

After being convicted by a jury of sexual abuse in the first degree, § 566.100, RSMo 1978,[1] Defendant was sentenced to five years' imprisonment. His direct appeal from that conviction is Case No. 18236. Following his conviction, he filed a motion, which was later amended, to have his conviction and sentence set aside pursuant to Rule 29.15.[2] His appeal from the denial of that motion, after an evidentiary hearing, is Case No. 19783. The appeals have been duly consolidated.

Defendant was charged with committing sexual abuse in the first degree by subjecting M.N., a person less than twelve years old, to sexual contact between September 1, 1985 and December 31, 1988. M.N. was Defendant's stepdaughter who was thirteen years old at the time of trial in April, 1992.

M.N. testified that from the time she was six years old until she was ten or eleven, Defendant periodically touched her "where [she] went to the bathroom" and that he had also touched her breasts. According to M.N., about once each week, when Defendant arrived home from work around midnight, he would enter her room while she was asleep and touch her inside her underwear. She testified that Defendant usually said nothing during these incidents and would stop when she told him to. On one occasion, she said that Defendant told her he was touching her because she "wanted it."

The evidence indicated that a female friend of the family, who had been living with them, told M.N.'s mother of her suspicion that something sexual was going on between Defendant and M.N. M.N. then revealed the incidents after being questioned by her mother in December, 1990. A Springfield, Missouri police officer was then called to the home to investigate.

According to the officer, M.N. told him of the incidents during an interview outside the presence of her mother, and she also showed him magazines with nude photographs and a vibrator which Defendant had shown her. The officer also testified that when Defendant arrived home, M.N.'s mother tried to tell him that she was sorry that she had to call the police. Defendant then told the officer, "I think I know why you're here." When the officer told him he was investigating an "allegation that possibly happened between him and [M.N.]," Defendant said, "I think I understand." The officer also said that Defendant looked at M.N. and told her "he wasn't mad at her," that she had done the right thing by telling the police, and that, "Now maybe we all can get the help we need."

## CASE NO. 18236
### VOLUNTARY INTOXICATION INSTRUCTION

■ Two of Defendant's six points of alleged error on his direct appeal relate to a voluntary intoxication instruction given at the request of the State. In his first point, Defendant contends that the trial court erred in instructing the jury on voluntary intoxication, because it was not supported by the evidence and was unduly prejudicial by emphasizing his drinking and implying that he was trying to use it as an excuse for his conduct.

The instruction in question was patterned after the version of MAI–CR3d 310.50 approved for use at the time of trial and read:

---

**1.** Section 566.100.1(2), RSMo 1978, provided that a person committed the offense of sexual abuse in the first degree if "[h]e subjects another *person who is* less than twelve years old to sexual contact." "Sexual contact" was defined in § 566.010.1(3), RSMo 1978, as "any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person."

**2.** All references to rules are to Missouri Rules of Court, V.A.M.R.

You are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct. Defendant argues that this instruction was given in violation of the Notes on Use which stated:

4. If there is no evidence of involuntary intoxication, and it may fairly be inferred from the evidence that the defendant was intoxicated or drugged to such an extent that his judgment and actions were substantially affected thereby, or that his capacity to know or appreciate the nature, quality, or wrongfulness of his conduct was significantly impaired by reason of intoxication, this instruction may be given by the Court on its own motion and must be given upon written request in proper form by the state or by the defendant. Even though there is evidence of consumption of alcohol or drugs, if there is no evidence from which such impairment could be inferred, this instruction may not be given over the objection of the defendant.

■ A jury instruction must be supported by substantial evidence. *State v. Coats*, 835 S.W.2d 430, 435 (Mo.App.E.D.1992). In the instant case, Defendant acknowledges that M.N. testified that she sometimes smelled alcohol on his breath when he would touch her; that he was a recovering alcoholic who drank during the time of the allegations for which he was tried; that he had discussed the possibility of alcoholic blackouts [3] with a psychologist who treated him for alcoholism; and that it was possible to have alcoholic blackouts and not recall them. He also points out, however, that he testified that he could not have suffered alcoholic blackouts during the period in question because he did not drink excessively around the children; that he never had an alcoholic blackout while married to M.N.'s mother; and that he had never touched M.N. in the genital area. Defendant, therefore, argues that the instruction was given contrary to the Notes on Use because there was no evidence of intoxication at the time of the acts described by M.N., let alone evidence sufficient to show that he was

intoxicated to such an extent that his judgment and actions were substantially affected, or that his capacity to appreciate the nature, quality, or wrongfulness of his conduct was significantly impaired.

One of Defendant's witnesses was Phillip Klingensmith, a psychologist, who testified that beginning in January, 1991, he treated Defendant for anxiety and depression secondary to the effects of alcoholism. His testimony included the following concerning his treatment notes:

"The patient states that he cannot say for sure that he has never touched her," her being his stepdaughter, "because he has had a number of different blackouts from drinking," meaning alcohol, "but he can't believe that he has touched her either. The only reason that he would think he might have is because he can't imagine his stepdaughter [M.N.], with whom he felt rather close, ever making up such a story, but he's totally flabbergasted by it."

On cross-examination by the State, he gave the following testimony:

Q. But the initial statement that the defendant made to you regarding the abuse on January 6 of 1991 is that he could not remember or say for certain whether or not he had touched [M.N.] because of alcohol blackouts he was having at the time, is that correct?

A. Yes, that's absolutely true.

Evidence of impairment sufficient to authorize the intoxication instruction was found lacking in *State v. James*, 869 S.W.2d 276, 278 (Mo.App.E.D.1994) (there was evidence that defendant's wife complained of his drinking shortly before the incident, defendant had been drinking and smelled of alcohol after the incident, and when he was arrested it was found that defendant had defecated on himself); *State v. Kehner*, 886 S.W.2d 130, 133–34 (Mo.App.E.D.1994) (there was evidence that defendant had consumed beer on the day of the incident and he smelled of and had a container of liquor in his vehicle when arrested); and *State v.*

3. There was no evidence presented concerning the meaning of alcoholic blackouts, their cause, whether present intoxication is necessary for their occurrence, or whether it is possible to commit acts like those attributed to Defendant by M.N. during such blackouts.

*Shields,* 862 S.W.2d 503, 505 (Mo.App.E.D. 1993) (there was evidence that defendant was acting unusual and sporadic three hours before the incident in question).

In the instant case, the only evidence concerning Defendant's condition at the time of any of the alleged occurrences came from M.N., who testified that she would occasionally smell alcohol on his breath, but that he would stop touching her when she told him to. The other evidence concerning the occurrence of alcoholic blackouts during the years in question was no more certain concerning impairment from intoxication during the incidents in question than would have been evidence that Defendant drank heavily during the years M.N. said these events occurred.

■ Pursuant to the Notes on Use, the intoxication instruction was not to be given unless the defendant was intoxicated to such an extent that his judgment and actions were substantially affected or his capacity to know and appreciate the nature, quality, or wrongfulness of his conduct was significantly impaired. The Notes specifically prohibited the instruction if the defendant objected[4] and there was "no evidence from which such impairment could be inferred." In the instant case, the evidence was insufficient to authorize the instruction. The giving of an instruction in violation of the Notes on Use constitutes error. *State v. Livingston,* 801 S.W.2d 344, 348 (Mo. banc 1990); *State v. James,* 869 S.W.2d at 278.

■ However, both error in the giving of the instruction and prejudice to the defendant are required before an appellate court may reverse based on an error in the jury instructions. *State v. James,* 869 S.W.2d at 278. Defendant, in his point relied on, alleges that the instruction "unduly prejudiced the jury by emphasizing Defendant's drinking of intoxicants and inferring that he was trying to use this as an excuse for his conduct."

In both *James* and *Kehner,* the appellate court found that the defendants were prejudiced by the giving of intoxication instructions which were submitted without sufficient evidentiary support. *State v. James,* 869 S.W.2d at 278; *State v. Kehner,* 886 S.W.2d at 134. In neither case, however, did the defendant attempt to defend the case on the basis of his intoxication. In each case, the court held that because the defendant "did not raise the issue of intoxication or impairment, submitting [the intoxication instruction] was likely to have confused the jury or misled them to believe [the defendant] admitted to some wrongdoing and was attempting to escape liability based on intoxication." *James,* 869 S.W.2d at 278; *Kehner,* 886 S.W.2d at 134.

■ In the instant case, however, Defendant testified about his alcoholism and the fact that he was drinking during the years in question. He also called the psychologist, who testified about Defendant's alcoholism as well as the fact that Defendant told him he was unable to say for sure that he had never touched M.N. because of a number of different blackouts caused from drinking alcohol. Contrary to *James* and *Kehner,* Defendant's evidence in the instant case injected the possibility that the acts occurred while he was not aware of his actions because of drinking intoxicants. It was Defendant's own evidence, and not the instruction in question, which emphasized his drinking and implied that it was an excuse for his actions. We also note that, although Rule 28.03 authorizes supplementation of objections in a motion for new trial, the failure of Defendant's counsel to specifically object to the instruction at the time it was tendered by the State may also be considered in determining prejudice. *State v. Poe,* 857 S.W.2d 419, 423 (Mo.App. E.D.1993).

Under these particular facts, we conclude that Defendant was not prejudiced by the

---

4. Defendant objected generally to all the instructions offered by the State at trial and later objected, in his motion for new trial, that this instruction was not supported by the evidence. The issue is not raised, and we do not decide whether the provision of the Notes on Use to MAI–CR3d 310.50 stating that "[e]ven though there is evidence of consumption of alcohol or drugs, if there is no evidence from which such impairment could be inferred, this instruction may not be given over the objection of the defendant" requires a contemporaneous, specific objection contrary to Rule 28.03.

instruction in question. This point is, therefore, denied.

■ In his third point relied on, Defendant complains that the intoxication instruction violated his right to due process, citing *State v. Erwin,* 848 S.W.2d 476 (Mo. banc 1993), *cert. denied,* 510 U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993). In *Erwin,* the Missouri Supreme Court held that an instruction patterned after the version of MAI–CR3d 310.50 approved for use at that time (the same instruction as that given in the instant case) should not be given because it implicitly relieves the State of the burden of proving beyond a reasonable doubt that defendant possessed the requisite mental state for the crime charged. *Id.* at 484; *State v. Kehner,* 886 S.W.2d at 133. In *Erwin,* however, the Supreme Court limited that holding to "cases tried in the future and cases now subject to direct appeal where the issue is preserved that MAI–CR3d 310.50 violated due process...." 848 S.W.2d at 484. The instant case was tried before *Erwin* and Defendant did not object, either at trial or in his motion for new trial, on the requisite constitutional grounds. *Erwin* is, therefore, inapplicable. *See State v. Kehner,* 886 S.W.2d at 133; *State v. Rollins,* 882 S.W.2d 314, 316 (Mo.App.E.D.1994); *State v. James,* 869 S.W.2d at 277. Defendant's third point is denied.

### CHARACTER

■ Defendant's second point on appeal concerns the failure of the trial court to give an instruction regarding his character, patterned after MAI–CR3d 310.40. The instruction, tendered by Defendant, read:

Evidence has been introduced concerning the reputation of Defendant as to traits of character. This evidence was received because a jury may reason that a person of good character as to such traits would not be likely to commit first degree sexual abuse. Therefore, you should consider the evidence concerning traits of character along with all of the other evidence in the case in determining the guilt or innocence of the Defendant.

If, from all of the evidence in the case, including that relating to traits of Defendant's character, you are not convinced beyond a reasonable doubt that the Defendant is guilty, you should acquit him. However, if, from all of the evidence in the case, including that relating to traits of Defendant's character, you are convinced beyond a reasonable doubt that the Defendant is guilty, you should so find even though he may have been a person of good reputation as to those traits of character.

The Notes on Use relating to MAI–CR3d 310.40 provide that the instruction must be given "[i]f evidence of reputation concerning a trait of character relevant to the issue of guilt is introduced." The Notes indicate that relevant traits of character will vary according to the offense being submitted and are distinguishable from evidence admissible to impeach a witness.

In the instant case, Defendant argues that the instruction was authorized by the testimony of two character witnesses who testified that he had a good reputation for being a truthful and honest person and the testimony of another witness that he was a "very upstanding person." He also points to his own testimony that he had never been convicted of any kind of crime or struck a woman or child to do any physical violence.

■ Evidence concerning general character for truth and veracity does not require the trial court to give the "character" instruction. *See State v. Taylor,* 726 S.W.2d 335, 338 (Mo. banc 1987); *State v. Manning,* 682 S.W.2d 127, 131 (Mo.App.E.D.1984); *State v. Foster,* 665 S.W.2d 348, 353 (Mo.App. S.D.1984); *State v. Wells,* 586 S.W.2d 354, 359 (Mo.App.E.D.1979).

The court in *State v. Culkin,* 791 S.W.2d 803, 811–12 (Mo.App.E.D.1990), also held that evidence of a defendant's "honesty" did not require the giving of the "character" instruction in a sodomy and rape case. In *Culkin,* the defendant presented the testimony of two witnesses that he had a good reputation for "truthfulness and honesty." The court noted the requirement that the character instruction be given when the character trait in evidence tends to make it less likely that the defendant committed the offense and also acknowledged the defendant's

argument that "honesty" connotes a person "who is upright and marked by strong moral rectitude." *Id.* at 812. The court then said, however:

> Evidence of a defendant's reputation for honesty does not require an instruction on character in a prosecution for assault or murder but it does in a prosecution for larceny and robbery. *State v. Manning,* 682 S.W.2d 127, 131 (Mo.App.1984). Unlike larceny and robbery, rape and sodomy are physical crimes committed against another person for which there is no financial motive. [Citation omitted.] We, therefore, find that defendant's reputation for honesty does not require an instruction on character in a prosecution for rape and sodomy.

*Id.*

In the instant case, Defendant argues that the "character instruction" was required by *State v. Gregory,* 822 S.W.2d 946 (Mo.App. S.D.1992). In *Gregory,* this court acknowledged that "honesty" includes the concept of "uprightness" which is marked by strong moral rectitude. *Id.* at 950. The court said that "by asking character witnesses about his reputation for 'honesty,' the defendant expanded the inquiry beyond his reputation for truthfulness." *Id. See also State v. Foster,* 665 S.W.2d at 354; *State v. Wells,* 586 S.W.2d at 359. In *Gregory,* however, unlike the instant case, the issue was whether the defendant placed his character in issue by the nature of his evidence so as to permit rebuttal evidence by the state on that issue. The court concluded that the rebuttal evidence was authorized because the nature of the character evidence presented by defendant went beyond his reputation for truthfulness and placed his character in issue. *Gregory,* 822 S.W.2d at 949–50.

The question in the instant case, however, is not solely whether the evidence placed character in issue. The overriding issue is whether the evidence of reputation concerns a character trait which is relevant to the issue of guilt. Notes on Use of 310.40 MAI–CR3d; *State v. Culkin,* 791 S.W.2d at 812. The proffered instruction itself referred to evidence "concerning the reputation of Defendant as to traits of character," and said

that such evidence was received because "a jury may reason that a person of good character as to such traits would not be likely to commit first degree sexual abuse." The court in *Culkin* decided that the character trait of "honesty" did not meet that criteria in connection with a sexual offense. *Id.* We do not disagree with that analysis under the narrow issue presented in this case.

The evidence that Defendant had never been convicted of another crime, that he was not the type of person to strike a woman or child to do violence, and that he was an "upstanding" person does not require a different result. For instance, testimony that a defendant had never been in trouble with the law does not necessarily place his character in issue. *State v. Foster,* 665 S.W.2d at 353. The testimony which Defendant translates as being that he is "not the type of person to ever have struck a woman or a child to do them physical violence" comes from his direct examination when he was asked: "During the period you were married to [M.N.'s mother] did you ever do any physical violence towards either [M.N.'s mother] or [M.N.]?" His answer was, "No, sir, I did not. I never struck a woman or a child in that type of manner or fashion, you know." As phrased, this question and answer did not relate to a character trait inconsistent with the commission of sexual abuse.

Finally, the testimony that Defendant was "a very upstanding person" came from a character witness and arose in the following context:

> Q. Now, Rick, do you have an opinion— or are you acquainted with Mr. Gately's [sic] reputation in the community as being a truthful and—as to his truth and veracity?
>
> A. He's a very upstanding person.
>
> Q. Is that good or bad?
>
> A. Yes.
>
> Q. It's good?
>
> A. (Nodded head affirmatively.)

It is apparent that the characterization of Defendant as a "very upstanding person" related to his reputation for truth and veracity, a character trait not requiring the instruction which is the subject of this point.

*See State v. Taylor,* 726 S.W.2d at 338; *State v. Martin,* 651 S.W.2d 645, 656 (Mo.App.S.D. 1983).

We conclude that under the facts of this particular case and the authorities discussed, the trial court did not err in failing to give the "character" instruction.

### ADMISSION OF VIBRATOR

■ In his fourth point relied on, Defendant contends that the trial court erred in admitting a vibrator in evidence because the alleged conduct involving it occurred after the time, and was not a part of the offense for which he was on trial. He also contends that any probative value of the vibrator was outweighed by its prejudicial effect.

At trial M.N. testified that at some unspecified time after the touching stopped, Defendant showed her a vibrator which the record indicates was "penis shaped." According to M.N., Defendant told her to use it like a massager any place on her body including where she "went to the bathroom," but told her "not to put it in because it would hurt."

Defendant admitted having shown M.N. the vibrator in question and telling her it was a "muscle massager." He testified, however, that the subject arose when he found the vibrator, which belonged to his ex-wife, disassembled in his clothing drawer and he confronted M.N. about "rummaging through things" and accused her of pilfering it for batteries.

■ The test for relevancy is whether the fact logically tends to prove or disprove a fact in issue or corroborates other relevant evidence. *State v. Alexander,* 875 S.W.2d 924, 928 (Mo.App.S.D.1994). Defendant acknowledges that generally, determination of relevancy of evidence and whether its probative value outweighs its inflammatory and prejudicial effect are matters for the trial court's determination, a decision which will be disturbed only for an abuse of discretion. *See State v. Gibson,* 636 S.W.2d 956, 958 (Mo. banc 1982). In this context, to establish an abuse of discretion, a defendant must show that reasonable persons could not differ as to the propriety of the trial court's ruling.

*State v. Clements,* 849 S.W.2d 640, 643 (Mo. App.S.D.1993).

■ In *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993), the court said:

The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. [Citation omitted.] There are exceptions to the rule. Evidence of prior misconduct of the defendant, although not admissible to show propensity, is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, [citation omitted] and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect. [Citation omitted.] The balancing of the effect and value of evidence rests within the sound discretion of the trial court. [Citation omitted.]

Generally, evidence of other, uncharged misconduct has a legitimate tendency to prove the specific crime charged when it " 'tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; [or] (5) the identity of the person charged with the commission of the crime on trial.' " [Citation omitted.]

Evidence that does not fall within one of the five exceptions may nevertheless be admissible if it is logically and legally relevant. *Id.*

■ Prior sexual conduct by a defendant toward the victim may be admissible as tending to establish a motive, such as satisfaction of the defendant's sexual desire for the victim. *See State v. Schaal,* 806 S.W.2d 659, 664 (Mo. banc 1991); *State v. Magouirk,* 890 S.W.2d 17, 17 (Mo.App.S.D.1994). The fact that the vibrator incident occurred subsequent to the acts for which Defendant was charged does not necessarily require its exclusion. *State v. DeClue,* 805 S.W.2d 253, 259 (Mo.App.S.D.1991).

In *State v. Akers*, 328 S.W.2d 31, 33–34 (Mo.1959), the court said, in an incest case, that other acts of "lascivious familiarity between the parties," not amounting to intercourse, were admissible "since such evidence is of such a character as tends to make it probable that the parties did commit the specific offense charged." Similarly, in *State v. Bascue*, 485 S.W.2d 35, 37 (Mo.1972), the court said such evidence was admissible as tending to show the "relationship between the parties and the probability that the parties committed the specific act charged (as constituting 'the foundation for an antecedent probability'), or as corroborative evidence...."

In *State v. Nolan*, 717 S.W.2d 573, 575 (Mo.App.S.D.1986), a prosecution for first degree sexual abuse, the state introduced a book containing sexually explicit photographs of children which the defendant had shown the victim (the daughter of a woman with whom defendant was residing) and her sister. This court held that the book was relevant, saying:

> The jury could reasonably believe that he showed the victim the book to try to persuade her that sexual contacts gave pleasure and were not wrong and thereby make her more receptive.... It would tend to create an atmosphere of sex consciousness, even if it were considered by some people as unobjectionable as a sex education tool.

*Id.* at 577. The court concluded that defendant's display of the book to young girls was "inappropriate conduct indicating his preoccupation with sex, making it reasonable to believe that he took advantage of the victim." *Id.*

In the instant case, the evidence relating to the vibrator indicated a sexual intimacy or "lascivious familiarity" between Defendant and M.N., was relevant to motive and intent, and was properly admitted. The trial court obviously determined that the relevance of the vibrator was not outweighed by any prejudice it might create. We are unable to

conclude that it abused its discretion in that regard. This point is denied.

### M.N.'S DIARIES AND SCHOOL RECORDS

■ In his fifth point, Defendant alleges trial court error in not admitting two of M.N.'s diaries and her school records. The school records consisted of her grades from the 1984–85 through the 1989–90 school years. They indicated that M.N. generally made good grades during all those years. One diary contained seven entries, apparently between November 4 and 19, 1989.[5] The other diary contained twenty entries between January 15, 1990 and November 16, 1990. Neither diary contained any reference to any improper contacts between M.N. and Defendant.

Defendant argues that these documents should have been admitted to show that M.N.'s grades gave no indication that she was experiencing any problems, and the diaries indicated she was a normal person with no indication that she was suffering from any trauma. He also argues that these exhibits would have rebutted the testimony of the family friend who lived with Defendant, M.N., and M.N.'s mother from January, 1990 to August, 1990, and who testified that she noticed a reluctance by M.N. to be left alone with Defendant and that she told M.N.'s mother that she suspected something sexual was occurring between Defendant and M.N.

When the school records were offered, the trial court noted that M.N. had already testified that she made good grades. In fact, she testified that she made mostly A's and B's except in the seventh grade when her grades dropped to C's.[6] Likewise, when the diaries were offered, M.N. had already testified that she had kept no diaries or written record of the acts with which Defendant was charged.

■ The trial court has discretion to reject evidence which is cumulative of that previously admitted. *State v. Reichert*, 854 S.W.2d 584, 599–600 (Mo.App.S.D.1993);

---

5. This diary has printed dates except that the year is blank. In one of the entries, the year 1989 was written in.

6. M.N.'s seventh grade year would have been 1990–91, nearly two years after the occurrence of the acts for which Defendant was charged.

*State v. Baum*, 714 S.W.2d 804, 808 (Mo.App. S.D.1986). *See also State v. DePoortere*, 303 S.W.2d 920, 925 (Mo.1957). In the instant case, we are unable to conclude that the trial court abused its discretion in the manner argued by Defendant. This point is denied.

## MOTIONS IN LIMINE AND EXCLUSION OF EVIDENCE

 In his sixth point relied on, Defendant contends that the trial court erred in "sustaining the various motions in limine filed by the State and in refusing to allow Defendant to present evidence" concerning five specified topics. To the extent that the point relates to the sustaining of motions in limine, it preserves nothing for appellate review because such rulings are interlocutory and subject to change during the course of the trial. *State v. Purlee*, 839 S.W.2d 584, 592 (Mo. banc 1992); *State v. Chambers*, 884 S.W.2d 113, 115 (Mo.App.W.D.1994).

Defendant also complains, however, that the trial court refused to allow him to present evidence with regard to those areas about which the trial court had sustained the various motions in limine, specifically describing those as: (1) any evidence concerning the psychological history of the alleged victim's mother; (2) any evidence concerning the alleged victim's mother not wanting to proceed with the prosecution of the case; (3) any evidence obtained by the Division of Family Services regarding the alleged victim's mother; (4) a statement by the alleged victim's mother that she had told M.N. what to say; and (5) any evidence concerning the Defendant's conduct with other children. For the reasons that follow, these contentions of trial court error are without merit.[7]

 The only reference to the psychological history of the victim's mother (topic (1)) referred to in Defendant's brief on this point concerns his attempt to cross-examine M.N. about an incident when her mother was alleg-edly found driving an automobile when she was not lucid and had to be pulled from the car. When Defendant asked a question about the incident, the trial court sustained the State's objection based on relevancy. Defendant did not thereafter make an offer of proof. Without such an offer the issue is not preserved for our review. *State v. Mansfield*, 891 S.W.2d 854, 855 (Mo.App. W.D.1995).

 Defendant did not make an attempt at trial to introduce evidence concerning topics (2), (3) or (4) and apparently relies on the sustaining of motions in limine as his basis for error. As indicated above, the motion itself preserves nothing for appeal and the proponent of the evidence must attempt to present the excluded evidence at trial. *State v. Purlee*, 839 S.W.2d at 592. To the extent this point relates to topics (2), (3) and (4), it, therefore, presents nothing for our review.

 With reference to topic (5), Defendant's trial counsel informed the court, in a narrative offer of proof, that he proposed to present the testimony of three character witnesses, who did later testify, that they had "observed Mr. Gately [sic] and observed him around his family and … didn't observe any of the traits or anything to indicate child abuse or sexual abuse or anything of that nature." The trial court sustained the State's objection except to the extent the witnesses would testify that they had never seen Defendant molest M.N. or any child in their presence. Assuming for the purpose of this point, but without deciding, that the form of the offer of proof was sufficient,[8] we find no error in the trial court's ruling.

 There was no indication that any of the proposed witnesses were qualified to testify about "traits … to indicate child abuse or sexual abuse." Assuming, without deciding, that such testimony would have other-

---

7. We need not and do not decide any issue relating to the relevance of any such proposed testimony.

8. The preferable method of making an offer of proof is to present the evidence by questioning the witness, outside the jury's presence. *State v.*

*L__ R__*, 896 S.W.2d 505, 509 (Mo.App.S.D. 1995). An offer made in narrative form may be acceptable in some circumstances if it is definite and specific, is not mere conclusions, and sets out sufficient facts to demonstrate admissibility. *Id.*

wise been admissible, an offer of proof must include sufficient facts to demonstrate admissibility. *State v. L___ R___,* 896 S.W.2d at 509. In *State v. Savory,* 893 S.W.2d 408, 411 (Mo.App.W.D.1995), the court held that an offer of proof must show the relevancy of the evidence sought to be admitted, must be specific, and must be definite. There was no offer in the instant case that complied with those requirements.

Defendant's sixth point is denied.

### CASE NO. 19783

■■■ The intoxication instruction referred to in our discussion of the direct appeal (Case No. 18236) also forms the basis for two of Defendant's points relied on in his appeal from the denial of his motion for postconviction relief. In his seventh point, he contends that the motion court erred in not setting aside his conviction based on the allegation in his amended Rule 29.15 motion that he was denied due process by the giving of the intoxication instruction. The motion court found that it was a matter for appeal; Defendant had not raised the constitutionality of the instruction at trial or in his motion for new trial; and that if the court were to vacate the conviction based on the giving of that instruction, "the result would be to allow post-conviction proceedings to be used as a substitute for appeal."

Defendant notes that Rule 29.15(a) provides that "[a] person convicted of a felony after trial claiming that the conviction or sentence imposed violate the constitution and laws of this state or the constitution of the United States ... may seek relief in the sentencing court pursuant to the provisions of this Rule 29.15," and that "[t]his Rule 29.15 provides the exclusive procedure by which such person may seek relief in the sentencing court for the claims enumerated."

Defendant also cites *Hanson v. State,* 684 S.W.2d 337, 339 (Mo.App.S.D.1984), which acknowledges the general rule that instructional error is trial error and not cognizable in a postconviction relief proceeding, but recognizes an exception to that rule when the error rises to the level of constitutional error. *Hanson,* however, involved the application of Rule 27.26(b)(3) which specifically provided

that "trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal."

In *State v. Clark,* 859 S.W.2d 782, 789 (Mo.App.E.D.1993), a Rule 29.15 motion alleging a violation of due process by the trial court was denied on the basis that it was an allegation of trial court error which should have been raised on direct appeal. The court said:

> Post-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review. [Citations omitted.] If the allegations of trial error are constitutional violations, they are not cognizable unless exceptional circumstances are shown which justify not raising the constitutional grounds on direct appeal. [Citation omitted.] Issues actually raised on direct appeal cannot be relitigated in a post-conviction proceeding.

*Id.*

In the instant case, the same issue was raised and has been denied by us in the direct appeal. By raising this contention in the Rule 29.15 proceeding, Defendant effectively seeks to avoid the consequences of his failure to timely raise a constitutional challenge to the intoxication instruction.

As indicated earlier in this opinion, *State v. Erwin,* 848 S.W.2d at 484, limited application of its holding that the instruction given in the instant case was violative of due process to those previously tried cases which were then subject to direct appeal and in which the due process issue had been preserved. The instant case was tried before *Erwin,* and the direct appeal was pending when that case was decided, but the issue of a due process violation was not preserved in the direct appeal. The result urged by Defendant would avoid the clear dictates of *Erwin.* Accordingly, this point is without merit and is denied.

■■■ In his eighth point relied on, Defendant contends that the motion court erred in denying his Rule 29.15 motion based on the alleged ineffectiveness of his trial counsel in failing to object, on constitutional grounds, to

the giving of the intoxication instruction either at trial or in the motion for new trial.

In order to prevail on a claim of ineffective assistance of counsel, Defendant must establish that: (1) his counsel failed to exercise the customary skills and diligence that a reasonably competent attorney would exercise in similar circumstances, and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). The movant has the burden of proving his grounds for relief by a preponderance of the evidence. Rule 29.15(h).

The *Erwin* case, however, which declared the instruction in question invalid, had not been decided at the time of Defendant's trial. The Missouri Supreme Court has rejected a similar contention, holding that it is not ineffective assistance of counsel to fail to anticipate changes in the law. *State v. Parker*, 886 S.W.2d 908, 923 (Mo. banc 1994). This point is without merit and is denied.

In his ninth point, Defendant alleges that the motion court erred in denying his 29.15 motion, based on the ineffectiveness of trial counsel, "because trial counsel failed to present and/or properly preserve through an offer of proof testimony regarding Defendant's good character, that is, evidence of Defendant's good moral character that he did not have the character traits associated with the crime of someone who had committed sexual abuse...."

Our review of the motion court's denial of a 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. *Murray v. State*, 775 S.W.2d 89, 89–90 (Mo. banc 1989), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1171, 107 L.Ed.2d 1073 (1990). Findings and conclusions are clearly erroneous only if, after review of the entire record, the court is left with a definite and firm impression that a mistake has been made. *State v. Ray*, 852 S.W.2d 165, 171–72 (Mo. App.S.D.1993).

At the evidentiary hearing on Defendant's 29.15 motion, two of the character witnesses who testified at trial gave their opinion that Defendant had a reputation for being a person of high moral character. They also testified that Defendant did not have a reputation for being a lascivious or lecherous person. One of them testified that he would have given the same testimony if he had been asked those questions at trial.

Defendant's theory under this point is that this testimony would have provided evidence of a character trait which was relevant to the commission of the offense with which he was charged and would have required that the "character" instruction be given. With that evidence and instruction, Defendant theorizes that the result of the trial would have been different.

As indicated earlier, relief based on the ineffective assistance of trial counsel requires a demonstration of prejudice. Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different (as opposed to showing that the errors had some conceivable effect on the outcome). *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; *Sidebottom v. State*, 781 S.W.2d 791, 796 (Mo. banc 1989), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990). *See also State v. Nolan*, 872 S.W.2d 99, 104 (Mo. banc 1994). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Nolan*, 872 S.W.2d at 104. It has been said that prejudice exists only where the trial counsel's acts or omissions are outcome determinative. *State v. Harris*, 870 S.W.2d 798, 814 (Mo. banc 1994).

The failure to present testimony, in a first degree sexual abuse case, that the defendant "enjoyed the highest reputation for ... morality in the community" does not require a finding of prejudice requiring postconviction relief. *Frederick v. State*, 754 S.W.2d 934, 935–36 (Mo.App.E.D.1988). In *Frederick*, the victim testified in detail to three instances of sexual abuse and there was evidence of admissions made by defendant. There was also evidence that defendant was a church member and assistant preacher. *Id.* at 936. The appellate court concluded that because of the overwhelming evidence of guilt, the failure of trial counsel to present character

witnesses "falls far short of undermining confidence in the verdict and showing a reasonable probability of a different result had such evidence been produced." *Id.*

We are likewise unable to conclude in the instant case that Defendant has sustained his burden to demonstrate prejudice from the failure to elicit testimony about Defendant's reputation concerning moral character. Although she was uncertain about exact times, M.N. was definite in her testimony about instances of sexual contact by Defendant. She also identified a penis shaped vibrator which Defendant admitted having discussed with her. In addition, there was testimony from an investigating police officer that Defendant made statements which could be considered as incriminating, and testimony by his psychologist that Defendant had been unable to say that the events in question did not happen. There was also evidence that Defendant's reputation for truthfulness and honesty was good and that he had never been convicted of another crime. Under these circumstances, we cannot conclude that the motion court's finding on this issue was clearly erroneous. This point is denied.

■ Defendant's tenth point is premised on error in the denial of his 29.15 motion because his trial counsel failed to preserve a record concerning actions of the prosecutor during closing argument. As we interpret this point, Defendant complains that his trial counsel failed to dictate into the record a description of the prosecutor's actions in slamming the vibrator against the bench in front of the jury after saying that the alternative to a finding of guilty in this case was "to say that unless a person tears up a child's vagina or does it on the front lawn in front of all the neighbors, you are not going to find that person guilty." The record shows that the objection by Defendant's trial counsel to that argument was overruled, but there is nothing in the record about the physical actions of the prosecutor.

Defendant does not, however, argue in his brief that the failure complained of constitut-

ed a failure to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances or that he was prejudiced as a result of such failure, the tests required under *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Likewise, Defendant neither cites relevant case authority holding that such failure constituted ineffective assistance of counsel or was prejudicial, nor explains why such precedent was unavailable. *See State v. Carter,* 859 S.W.2d 191, 193 (Mo.App. E.D.1993). Under those circumstances, the claims are waived and the point is denied.

■ In his eleventh point, Defendant contends that the motion court erred in denying his 29.15 motion because his trial counsel failed to present, or preserve through an offer of proof, testimony that M.N.'s mother had told Defendant's mother that she was sorry he had been arrested and that she had told M.N. what to say. Neither of these witnesses testified at trial. At the evidentiary hearing on the 29.15 motion, Defendant's mother testified that M.N.'s mother called her shortly after the arrest and said, " 'Tell him to come home, that all was forgiven,' that she had told [M.N.] what to say and that she would fix it." [9] M.N.'s mother denied, however, having made those statements. The motion court found that there had been no evidence that the victim had lied and that the only possible use for the evidence would have been to impeach M.N.'s mother if she had testified. The court concluded that "Movant was not prejudiced, and that there is no reasonable probability that this evidence would have affected the outcome...."

Defendant does not challenge the motion court's finding that his mother's testimony would have been admissible only to impeach the contrary testimony of M.N.'s mother. Additionally, the ineffectiveness of counsel argued by Defendant in this point does not relate to the failure to call M.N.'s mother as a witness, but rather the failure to call his mother.

---

9. We note that the statement attributed to M.N.'s mother by Defendant's mother does not necessarily indicate that M.N. had been told what to say before the incidents were reported to authori-ties. Rather, a reasonable interpretation could be that M.N.'s mother was attempting a reconciliation after the arrest, and in an effort to clear the matter up had told M.N. what to say.

Defendant relies on *State v. Blue*, 811 S.W.2d 405 (Mo.App.E.D.1991). That case held that the motion court erred in denying movant an evidentiary hearing on his contention that trial counsel was ineffective in not calling his grandmother to testify at trial that the victim's mother told her she forced her daughter to fabricate the rape and sodomy in question. *Id.* at 410. The court held that the testimony would have corroborated the victim's testimony that she was not raped. *Id.* In that case, however, the victim's mother testified at trial. The evidence also included the victim's out-of-court statements alleging the violations, admitted pursuant to § 491.075, RSMo 1986, as well as her trial testimony in which she denied that she had been raped. *Id.* at 408.

*Blue*, however, is not controlling under the facts of the instant case. Here, M.N. testified about the instances of sexual contact by Defendant and denied that anyone had told her what to say. Additionally, M.N.'s mother, who Defendant alleges made the statements in question to his mother, did not testify at trial.

 Selection of and the decision not to call witnesses are matters of trial strategy and are virtually unchallengeable. *State v. Roe*, 845 S.W.2d 601, 605 (Mo.App.E.D.1992). To establish ineffectiveness of trial counsel in failing to call a witness, a movant must prove that the witness's testimony would have aided the defense. *Leisure v. State*, 828 S.W.2d 872, 878 (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992).

 Defendant does not cite authority for his apparent premise that his mother's testimony was admissible in the absence of a testimonial denial of the statements by M.N.'s mother. Failure to offer evidence which would have been inadmissible under the circumstances is not ineffective assistance of counsel. *State v. Twenter*, 818 S.W.2d 628, 638 (Mo. banc 1991).

The eleventh point is denied.

 In Defendant's twelfth and final point relied on, he alleges that the motion court erred in denying him discovery "of the Division of Family Services [DFS] and Juve-nile Offices investigative files regarding the alleged criminal sexual abuse" in that it prevented him from determining "whether or not other grounds should have been raised in his amended motion under Rule 29.15 or to know whether or not there was any evidence which should have been presented to either the jury or made a part of the trial record by trial counsel."

Prior to the filing of his amended 29.15 motion, Defendant served a request for production of documents on the prosecutor seeking:

"[t]he complete file compiled by the Juvenile Office of Greene County, Missouri, the Division of Family Services, and the Prosecuting Attorney's Office of Greene County, Missouri, including but not limited to all records, documents, statements, and investigative reports, and notes or other memoranda generated with regard to [M.N.], John Gateley, [Defendant's daughter by a former marriage], [M.N.'s mother], and the allegation of sexual abuse with which movant was charged and tried."

That request was denied by the motion court. Defendant also served subpoenas duces tecum on the director of the Greene County Juvenile Office and the regional director of the DFS seeking their respective files concerning the same parties. Although the subpoenas sought the production of those matters four days before the amended 29.15 motion was due, the record does not indicate that any action was taken on them at that time. The evidentiary hearing on the 29.15 motion was set for August 11, 1994, and additional subpoenas were issued for the same documents described in the original requests for production to be produced on that date. On the day of that hearing, the motion court again stated that it was overruling Defendant's "Request For Production" but marked the files as exhibits and caused them to be sealed and filed with the record.

Defendant states in his brief that his purpose in seeking the materials was primarily to determine "whether or not there is corroborating information or information that documents [his] theory that there were reasons for the mother to have the alleged victim

fabricate the account of the alleged sexual abuse." As we interpret the argument, it relates primarily to Defendant's contention that trial counsel failed to present or properly preserve the issue of the psychological problems and state of mind of M.N.'s mother, including allegations that Defendant was attempting to kill them, in support of his theory that her mother told M.N. what to say about the alleged abuse. We further glean from the record that the investigative files had been made available to trial counsel prior to trial pursuant to an order of the trial court.

Notwithstanding the questionable relevance of some of the information sought by Defendant, an issue which we need not decide, we note that Defendant did elicit testimony from the investigating police officer about the apparent emotional condition of M.N.'s mother when he investigated the report of sexual abuse, including her fear that Defendant was trying to kill her and the fact that M.N. was present when those statements were made. Also pertinent to this point is the fact that M.N. denied, under cross-examination by Defendant's trial counsel, that her mother had told her what to say concerning the allegations of sexual abuse.

There is authority for the proposition that the Rules of Civil Procedure relating to discovery apply in connection with a postconviction motion seeking to vacate, set aside or correct the judgment or sentence. Rule 29.15(a); *State v. Baker,* 859 S.W.2d 805, 810 (Mo.App.E.D.1993).

Section 211.321.1, RSMo 1994, however, provides, in pertinent part:

> Records of juvenile court proceedings as well as all information obtained and social records prepared in the discharge of official duty for the court shall not be open to inspection or their contents disclosed, except by order of the court to persons having a legitimate interest therein. . . .

Section 210.150 in effect at the time [10] provided that the records of the DFS pertaining to reports of sexual abuse were to be confidential with certain exceptions listed in the stat-

ute, none of which would apparently have permitted access to the documents sought by Defendant in the instant case.

*Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), concerned the issue of whether records of a protective service agency which investigated cases of suspected mistreatment and neglect should be disclosed to a criminal defendant in spite of a statute making them confidential. In *Ritchie,* the United States Supreme Court determined that the interests of all parties could be served by an in camera inspection of the records by the trial court to determine whether they contained information that probably would have changed the outcome of the trial. 480 U.S. at 60–61, 107 S.Ct. at 1002–03.

This court, in *State v. Davison,* 884 S.W.2d 701, 703 (Mo.App.S.D.1994), had before it the issue of whether a defendant charged with first degree sexual abuse was entitled to the production of DFS and juvenile court records concerning the victims. Noting the statutes providing confidentiality for such records, the court concluded that an in camera inspection conducted by both the trial and appellate courts indicated nothing in the records which would have changed the outcome of the trial. *Id.* at 703–04.

In the instant case, we have made a gratuitous review of the records in question to determine if they contained any information, as described in Defendant's brief, which would have indicated that M.N.'s mother told her what to say or that the testimony was fabricated. That review failed to reveal any such information. Without indicating that the information sought in the instant case was discoverable under these facts, this point is denied.

The judgment of the trial court and the order of the motion court are affirmed.

PARRISH, J., concurs.

PREWITT, J., concurs and files concurring opinion.

---

10. After the discovery requests were made and denied in the instant case, § 210.150 was amended to permit the release of some investigation records to alleged perpetrators. The amended statute was not in effect when the rulings about which Defendant complains were made.

PREWITT, Judge, concurring.

I concur in the result. I am of the opinion that the evidence recited in the majority opinion was sufficient for the giving of MAI–CR3d 310.50, regarding voluntary intoxication. One or more members of the jury may have felt that the reprehensible behavior charged would not have occurred except for Appellant's intoxication.

The points raised as to character in both appeals fortify my opinion that character evidence is "usually insignificant, and often misleading, in the trier of facts' consideration of the main issues. I believe such evidence tends to confuse more than it helps." *State v. Hendrix,* 699 S.W.2d 779, 781 n. 2 (Mo. App.1985). *See also LaGue v. Farmers & Merchants Ins. Co.,* 779 S.W.2d 14, 16 (Mo. App.1989) ("the interspersing of the collateral issue of character into civil controversies carries dangerous baggage such as distraction from the main issue, and probable prejudice."). Such evidence, however, has been long allowed, primarily in criminal matters, in Missouri and elsewhere. *See* 22 WILLIAM A. SCHROEDER, MISSOURI PRACTICE, MISSOURI EVIDENCE § 404.1, pp. 254–258 (1992); 29 Am.Jur.2d *Evidence,* § 367, p. 406 (1994).